**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Julius L. GULLEDGE et al., Defendants,**
**Carl Hathcock, Defendant-Appellant.**

**No. 72-1332.**

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1972.

**714**

Clyde W. Woody, Marian S. Rosen, Houston, Tex., for defendants.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before DYER, SIMPSON and MOR-GAN, Circuit Judges.

DYER, Circuit Judge:

A jury convicted Hathcock on two counts of transporting in interstate commerce more than $5,000 of property known to be stolen, in violation of 18 U. S.C.A. § 2314, and on one count of conspiracy in violation of 18 U.S.C.A. § 371. One of the § 2314 counts charged Hathcock together with Gulledge, Mosley, and Haynes with transporting 124 cases of stolen whiskey from Houston, Texas, to Selmer, Tennessee; the other § 2314 count charged that Hathcock and Mosley transported 147 cases of stolen liquor from Houston to Bossier City, Louisiana. The § 371 count charged all four of the co-defendants with conspiring to commit a substantive violation of § 2314.[1]

1. Gulledge, Mosley, and Haynes were tried together, and their convictions were affirmed. Gulledge and Mosley v. United States, 5 Cir. 1969, 405 F.2d 880; Haynes

Hathcock urges on appeal that the district court erred in its admission of certain evidence, that the court's jury instructions were clearly erroneous, and that the evidence taken as a whole was insufficient to support his conviction. We affirm.

### The Bossier City Search

On May 7, 1967, two men left a U-Haul trailer at a service station in Bossier City, Louisiana, attended by James Cobb. The men, one of whom Cobb equivocally identified in court as Hathcock, indicated that their car was running hot and asked permission to leave the trailer parked at the station for "two or three days." Curiously, although the two never gave Cobb any identification, they stated that "everything we own is in the trailer." Ten days later when the men failed to return, Cobb became suspicious and called the Sheriff. The Sheriff and several deputies arrived at the service station on May 18, and, without a search warrant, opened the trailer. It was stacked full of cases of liquor which were later identified as part of the whiskey that had been stolen from the Quality Beverage Company in Houston on April 21, 1967.

During Hathcock's trial no motion to suppress was made, nor was any objection raised, concerning the testimony as to this episode. Because there is more than sufficient evidence to support the conclusion that the trailer had been abandoned at the time of the Sheriff's search, the admission of evidence regarding the fruits of his discovery does not constitute plain error. It is clear that the personal right to Fourth Amendment protection of property against search and seizure is lost when that property is abandoned. United States v. Edwards, 5 Cir. 1971, 441 F.2d 749, 751–753; see United States v. Jordan, 2 Cir. 1968, 399 F.2d 610, 614.

v. United States, 5 Cir. 1969, 415 F.2d 347. Hathcock was tried separately from the other three co-defendants because he

### The Selmer, Tennessee, Search

Berry (Junior) Smith was the proprietor of the Old Hickory Grill in Guys, Tennessee. Hathcock and the other three co-defendants came into his tavern on the morning of May 10, 1967, inquiring if Smith was interested in purchasing a substantial amount of liquor. While beer is legal in McNairy county, where Guys is located, the county is dry as far as liquor is concerned, and apparently Smith had been known to deal in bootleg whiskey in the past. Smith was told that he could get "a real good price" ($40 per case) if he would buy "five or six hundred cases."

Smith replied that he would have to go into town to see if he could raise enough money. Instead, he called Sheriff Pusser in Adamsville, Tennessee, and told him that there were four "real tough characters" with "a load of whiskey" at his grill. Informing the Sheriff that at least one of the men was armed and that they had been discussing their participation in a "shoot-out" in Starkville, Mississippi, Smith suggested that the Sheriff hurry and advised him to bring a search warrant. Finally, Smith asked Pusser if he would make a cursory search of the tavern before searching the co-defendants' vehicles so that, in case some of them escaped, none would suspect that Smith had notified the police.

As a result of this report, Sheriff Pusser drove to Selmer, Tennessee, to pick up a deputy and to obtain a search warrant. He was, however, unable to procure a warrant because "the courthouse was closed on Wednesdays"; moreover, the judge could not be located. Pusser nevertheless proceeded as rapidly as possible to the Old Hickory Grill, arriving some 25 or 30 minutes after Smith had made his call. There were five or six men inside the tavern and two outside at a picnic table. After a hasty search of the building, the Sheriff

was not in custody at the time of their trial.

went outside with Smith to search his automobile. Smith indicated that the two men at the picnic table, Mosley and Gulledge, were two of the suspects, stating that he thought that Mosley was armed. Overhearing this remark, the deputy took his shotgun from the patrol car and immediately placed Mosley and Gulledge under arrest. While this was taking place, the Sheriff noticed an Oldsmobile with a U-Haul trailer attached to the rear parked behind a mobile home on a hillside next to the grill. The trailer was so heavily loaded that it was almost dragging the ground. Walking over to the car, he observed that there was a bottle of whiskey and a pistol in plain view on the front seat. A quick search revealed that the pistol was loaded, and a second loaded pistol was found in the glove compartment. The Sheriff then shot the lock off the trailer; it was full of untaxed whiskey from Houston. In the meantime the deputy, after putting Mosley and Gulledge in the patrol car, went inside to arrest Hathcock and Haynes, but they had slipped out the back door and disappeared.

The deputy drove the patrol car with the prisoners back to Selmer, and the Sheriff followed in the Oldsmobile with the trailer. Early that afternoon Smith observed Hathcock and Haynes, who had been hiding in the "weed field" across the road, get into a second car and speed away. Several days later at the Selmer police station, Sheriff Pusser searched the trailer a second time, again without a warrant, and inventoried its contents.

■ The district court's admission, over Hathcock's vigorous Fourth Amendment objections, of Smith's and Sheriff Pusser's testimony concerning the two searches of the trailer was not error. Because of the well established plain view doctrine, it is evident that the Sheriff's observation of the bottle of whiskey and pistol on the front seat of the Oldsmobile did not constitute a search within the intendment of the Fourth Amendment.[2] The Sheriff certainly had a right to be in the position that afforded him the view; the Old Hickory Grill is a place of public accommodation, and the proprietor invited the Sheriff onto his property.

■ Although the courts have always preferred searches pursuant to a warrant—as opposed to warrantless searches—because they assure the ideal of an objective predetermination of probable cause by a detached and neutral magistrate,[3] instances occur where the officer must independently ascertain whether probable cause exists and then proceed upon his own determination even though without a warrant.[4] One long recognized exception to the general requirement of a search warrant is a search by an officer who has probable cause to believe that contraband is concealed in a movable vehicle. Carroll v. United States, 1925, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543. On review, the actions of an officer are to be measured by the reasonable belief standard enunciated in Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We also recognize that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a suf-

---

2. Harris v. United States, 1968, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067; Ker v. California, 1963, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v. Williams, 5 Cir. 1971, 446 F.2d 486, 487–88; United States v. Davis, 5 Cir. 1970, 423 F.2d 974, 977; Marshall v. United States, 5 Cir. 1970, 422 F.2d 185, 189; United States v. Johnson, 5 Cir. 1969, 413 F.2d 1396, 1398–1400, aff'd en banc, 5 Cir. 1970, 431 F.2d 441; Agius v. United States, 5 Cir. 1969, 413 F.2d 915, 919.

3. See Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

4. For a useful discussion of warrantless searches see Player, Warrantless Searches and Seizures, 5 Ga.L.Rev. 269 (1971); Comment, 38 Brooklyn L.Rev. 232 (1971).

ficient authorization for a search." [5] Applying these concepts to the case *sub judice,* we conclude that, in light of all of the surrounding circumstances, the Sheriff's search at the Old Hickory Grill was proper. It is clear from the record that probable cause and sufficient exigent circumstances existed to justify it: (1) a bottle of illegal whiskey and a pistol were observed on the front seat of the car; (2) an extremely overloaded trailer was attached to the rear of the automobile; and (3) two suspects were at large in the area.

With respect to the second search of the trailer some days later at the Selmer police station, the Supreme Court's recent decision in Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, makes it plain that if the police may make a legal contemporaneous search under Carroll v. United States, 1925, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543, "they may also seize the car, take it to the police station, and search it there." [6] Consequently, the second search was in no way violative of the Fourth Amendment.

### Jury Instructions

Contesting the court's jury instructions for the first time on appeal, Hathcock asserts that the instruction concerning the permissible inferences which may be drawn from possession of recently stolen property amounted to plain error. We disagree. Virtually identical instructions have been approved by this Court in a long line of cases beginning with Orser v. United States, 5 Cir. 1966, 362 F.2d 580.[7] The charge was at all times couched in terms of "inference" and not presumption; moreover, the members of the jury were informed that it was their exclusive province "to determine whether the facts and circumstances warrant any inference which the law permits . . . ."

Contrary to Hathcock's contention at oral argument, our holding in United States v. Cameron, 5 Cir. 1972, 460 F.2d 1394, is inapplicable here. There we stated that while we had

approved the use of such an instruction . . . where the defendant had been charged with an offense *other* than the *possession* of stolen property, such as the . . . transportation . . . of the item or items involved . . . we are unwilling to approve the delivery of such an advice to the jury where . . . the accused is alleged to have violated the law by "possessing" stolen property . . . .[8]

*Cameron* merely recognized the black letter rule that each statutory element of a crime must be proven beyond a reasonable doubt—*i. e.,* that one statutory element cannot be inferred from the proof of another. *Cameron* involved the crime of knowing possession of stolen property; thus, knowledge could not be inferred from possession. In the case *sub judice,* however, the offense charged is the interstate transportation of stolen property with the knowledge that it is stolen. Possession is not a statutory element of the crime. Consequently, the unexplained possession of property recently stolen in another state is an appropriate circumstantial fact on which to bottom the permissible inferences of both knowledge and transportation.

Emphasizing that the cases in which we approved similar instructions involved a single defendant, Hathcock also contends that the challenged

5. Chambers v. Maroney, 1970, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419; *see* Coolidge v. New Hampshire, 1971, 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L.Ed.2d 564.

6. Coolidge v. New Hampshire, 1971, 403 U.S. 443, 458, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564.

7. *E. g.,* Young v. Wainwright, 5 Cir. 1971, 439 F.2d 426; United States v. Andrews, 5 Cir. 1970, 429 F.2d 574; United States v. Lawrence, 5 Cir. 1970, 427 F.2d 95; United States v. Cook, 5 Cir. 1969, 419 F.2d 1306.

8. 460 F.2d at 1399–1400 (emphasis in the original).

instruction was improper because it failed "to set forth that such possession must be 'exclusive.'" This argument is unpersuasive; not only is there no authority for the proposition, it is illogical. "Legal possession" does not mean just *physical* possession; it may be actual or constructive, sole or joint. *See* Hale v. United States, 5 Cir. 1969, 410 F.2d 147, 150, cert. denied, 1969, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179; Barnes v. United States, 5 Cir. 1965, 341 F.2d 189, 192 & n.5; Arellanes v. United States, 9 Cir. 1962, 302 F.2d 603, 608 & n.8.

Hathcock makes the additional argument that the court's jury instruction was deficient because it did not include a definition of "recently stolen property." Although the inclusion of such a definition would have improved the charge, the phrase is not so exotic as to demand explanation. Certainly the failure to define the term does not rise to the level of plain error.

### *Other Alleged Errors*

Hathcock's other claims of error are without merit. With respect to witness McFall's testimony regarding an alleged offer by Hathcock to sell him some whiskey, McFall was obviously confused by counsel's cross-examination about the date. Furthermore, even if the admission of this testimony by McFall, and of Saragus's testimony concerning the liquor which he inspected in Philadelphia, Mississippi, was error, it was harmless. *See* Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Finally, we consider as frivolous Hathcock's assertions that the prosecution failed to establish the *corpus delicti* and that the evidence was insufficient to support his conviction. A careful review of the record convinces us that there was ample evidence of such quality and weight to justify and support the jury's guilty verdict.

Affirmed.