**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Thomas ALLEN et al., Defendants-**
**Appellants.**

**No. 72–2084**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

·Lucian Lamar Sneed, Atlanta, Ga. (Court-Appointed), for defendants-appellants.

John W. Stokes, Jr., U. S. Atty., P. Bruce Kirwan, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellants were convicted of willful and knowing possession of an illegal firearm, that is, a double barrel 12 gauge shotgun sawed-off to a total length of less than 26 inches.[1] Appellants complain only of the denial of their motion to suppress. They contend that the discovery of the illegal weapon occurred during an unconstitutional search. Finding their contention to be without merit we affirm the judgment of the District Court.

At approximately 2:30 in the morning of September 30, 1970 officers Williams and Loudermilk were patrolling the Peachtree Circle area of Atlanta. They noticed one of the trio of appellants standing in the office of a service station while another stood just outside the door. There was no car in the service area of the station and the officers circled the block to see if anything was afoot.

While making their second swing past the service station the officers observed that Orr and Sterling who were in the gas station were standing with the receiver of the pay telephone between their heads, and they appeared as if they were talking to someone. The officers also noted a·Cadillac automobile parked down Peachtree Circle approximately 300 feet from the service station, far out from the curb. One of the defendants—who was subsequently identified as Allen— was at the wheel.

The officers again circled the block. As they passed the parked car, which they had seen before, they noted the two appellants who had been in the service station were walking toward this car. The service station manager was motioning the officers into the station.

He related to them that although the pair in the service station had acted as though they were speaking to someone, when they hung up the two nickels had returned down the coin chute. He told the officers that the pair were acting "awfully suspicious" and that he thought they were up to something. The officers proceeded to the parked auto and spoke to appellants.

At some time before the two officers approached the Cadillac automobile, they placed a call for assistance. The record

---

1.  26 U.S.C.A. § 5861(d) makes criminal the possession of such a weapon when it is unregistered. The shotgun we are concerned with here was not registered.

does not disclose exactly when this call was placed, but it was before the officers drove their car to the parked Cadillac.

As the officers pulled up behind the automobile they noted that its license tag was expired by over a month. One officer pointed this out to appellant Allen, the driver, who seemed surprised to receive this information. He and the other two appellants and the police officer walked to the back of the car. At this time Detective McConnel who had answered Officer Williams' call for assistance arrived on the scene. He parked his car on the wrong side of the street, the front bumper of his car against the front bumper of the Cadillac. He got out of the car and began walking towards the rear of the Cadillac where the others stood. At this instant, the officers testified, no one was planning to arrest any of the appellants nor were they being investigated for any particular crime.

As Detective McConnel reached the middle of the Cadillac he stopped and flashed his night light inside the car. He immediately saw the illegal shotgun on the right rear floorboard of the car. Appellants were placed under arrest for possession of an illegal weapon. They now contend that a search occurred and that the search was illegal. We find however that no search occurred since the weapon was in plain view.

■ If the officers were—as appellants contend—in a position that they had no right to enter save by authority of a warrant or probable cause plus exigent circumstances then a search occurred. Appellants apparently wish us to hold that a police officer must have probable cause before he can begin investigating persons or circumstances which to him appear suspicious. This contention is unacceptable.

In United States v. West, 5 Cir., 1972, 460 F.2d 374, 375–376, the appellant challenged the fruit of a policeman's observation, of a sawed-off shotgun lying on the floor of an automobile, which occurred during a routine investigation. We held that an officer answering an official call had not only a right but a duty to investigate suspicious circumstances. We phrased it this way. "The local policeman * * * is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so."

■ We believe that these Georgia officers would have been derelict in carrying out their appointed duties had they neglected to investigate given all of the circumstances at hand, not the least of which was the cautious patience which on each circling of the block uncovered new suspicious facts.

Answering an official call, Detective McConnel certainly had a right to be in the position from which he discovered the illegal weapon. The shotgun was in plain view from that position. As Judge Goldberg has stated, "the plain view rule does not go into hibernation at sunset," Marshall v. United States, 5 Cir., 1970, 422 F.2d 185, 189; United States v. Hanahan, 7 Cir., 1971, 442 F.2d 649, nor should we hold that the night-time, friend as it is to the criminal element, should be made an impenetrable shield behind which criminal activities, though they would be the height of folly in the daytime, are invulnerable.

Our conclusion, that the discovery and seizure of the contraband weapon was justified under our plain view cases, makes it unnecessary to consider whether there existed at the time of the seizure the requisite probable cause plus exigent circumstances necessary to support a search.

Affirmed.