**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sheria HARVEY, Defendant-Appellant.**

**No. 73-1577**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1973.

\* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of

William L. Crull, III, New Orleans, La. (Court-appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen A. Mayo, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

AINSWORTH, Circuit Judge:

Defendant-appellant Harvey was convicted by a jury of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. We affirm.

Police officers observed Harvey and a friend get out of a car, remove two tires from the trunk, place them on the sidewalk, and then walk away on seeing the police car. A police check revealed that the car from which Harvey had alighted was stolen. Harvey and his friend were then arrested and jailed.

Harvey contends that the statement he gave to FBI agents who questioned him after his arrest was inadmissible at trial because it was not voluntary. He bases this contention on these facts: he was suffering from methadone withdrawal symptoms; he was attempting to secure the release of his friend, who was critically ill; the agents destroyed their interview notes after the notes were typed. The record reveals that after Harvey's arrest, he was questioned by FBI agents. They read him the *Miranda* (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings, showed him the card on which the warnings were printed,[1] asked him if he understood, and had him sign the waiver form. Harvey told the agents that he was beginning to suffer some withdrawal symptoms, his arrest having prevented him from receiving his daily treatment under the Methadone Sustenance Program. His worst symptom was a headache, which he did not describe as particularly severe. Medical expert testimony at trial was that at that point, Harvey would have been more susceptible to suggestion, but that he would know what he was doing. The FBI agents testified that Harvey seemed lucid to them. Harvey signed the waiver form; he did not seek to terminate the interrogation; he did not complain that his headache impaired his compre-

hension. Harvey testified that he was concerned about obtaining the release of his critically ill friend. Apparently he thought that some sort of statement would achieve that result, which in fact it did. The agents testified that Harvey told them during interrogation that he saw the car on a Chicago street, that it was unlocked, and that the ignition had been hot-wired. They further testified that he said that the car appeared to him to have been stolen already, that he had no difficulty in starting it, and that he later drove it to New Orleans. Harvey testified at the trial, saying that he merely told the agents that he was "responsible" for the car. He testified in detail that he bought the car from a friend who was supposed to forward the title papers. He said that the agents were not interested in hearing about this alleged transaction.

■■ On appeal, Harvey alleges that the typed statement does not reflect what he actually told the agents, and that their destruction of their original notes was to cover up discrepancies. The conflict in Harvey's and the agents' testimony created a question of fact to be resolved by the jury, which did not find that Harvey's version was more credible than the version recounted by the agents. The factual issue was appropriately presented to the jury, and under these circumstances it is not our function to overturn the jury's findings. The record does not contain any support for finding that Harvey was so incapacitated that as a matter of law his statement was involuntary. Therefore, it was admissible at trial.

■■ Harvey also contends that his motion for acquittal should have been granted. There was substantial evidence presented by the Government consistent with the hypothesis of the defendant's guilt. The defendant's own testimony was consistent with the theo-

---

1. Harvey testified at the trial that he is illiterate. His "reading" the card would, therefore, be meaningless; however, he did not tell the agents that he was unable to read the card, nor did he evidence a failure to comprehend the significance of the oral *Miranda* warnings.

ry of his innocence. This conflict was appropriately resolved by the jury, which apparently did not credit Harvey's testimony.[2]

We have considered the other issues presented on appeal, and we find them to be without merit.[3]

Affirmed.

2. "On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Goverment, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. Sanders v. United States, 5 Cir. 1969, 416 F.2d 194, 196; Jones v. United States, 5 Cir. 1968, 391 F.2d 273, 274; Weaver v. United States, 5 Cir. 1967, 374 F.2d 878, 881." United States v. Warner, 5 Cir., 1971, 441 F.2d 821, 825, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

3. They were: whether failure to give a requested jury charge was error, whether a driver's license and social security card which the defendant falsely represented to be his own were inadmissible at trial, and whether the Government's statement at trial that the State still needed the documents was an impermissible reference to pending prosecution.