284 So.2d 516

**Bobby Gene McKESSICK**

v.

**STATE of Alabama.**

**SC 349.**

Supreme Court of Alabama.

Sept. 13, 1973.

Rehearing Denied Nov. 8, 1973.

Kenneth R. Cain, Ozark, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State, appellee.

MADDOX, Justice.

Appellant, Bobby Gene McKessick, was indicted, tried and convicted for the unlawful possession of drugs.

Lt. Kater Williams of the Mobile City Police Department was a shift lieutenant and on the morning of January 11, 1971, between 1 and 2 o'clock, he received a radio dispatch to call a telephone number. Lt. Williams called the number and talked to an informer. He knew the informer. He testified the informer was reliable in that the information supplied by him on previous occasions had led to "more than ten" convictions in Mobile County. Lt. Williams was informed that there was a white male in the vicinity of the Loop on Highway 90, driving a tan, 1967 Plymouth automobile, with an Alabama license. The informer gave the full license number, but the officer could only recall at trial that the first two numerals were "27–." The informer described the occupant of the car as being approximately five feet, ten inches tall, with black hair and weighing 175 to 180 pounds. He said he would be wearing a blue suit. The informer said he thought the individual described was about 38 years of age. The informer stated that the subject was "dealing in narcotics."

Lt. Williams went to the Loop area, and saw a vehicle with the tag number which had been given to him by the informer. The driver of the automobile fit the description given by the informer. Lt. Williams followed the car on Highway 90 west and called for another unmarked car to assist in following the vehicle. He continued to keep the car in sight. The car pulled into a Trackside service station and the subject got out and went into the station. The officer, using binoculars, observed the subject make three telephone calls and talk to the attendant. He was there approximately 45 minutes.

While the subject was at the service station, there were three or four cars which came in for service. When the subject left and headed back toward Mobile, Lt. Williams noticed there were two people in the car. Lt. Williams called a marked patrol car to pull the subject's car over. When the car was stopped, Lt. Williams and two other officers were present. The woman passenger was known by the police as a user of narcotics. While the officers were questioning both McKessick and the female passenger, one of the officers said, "She just threw something." Lt. Williams and another officer found numerous pills, capsules and tablets on the ground near the door from which the female passenger had

alighted. While the officers were gathering the pills off the ground, they noticed some more on the floorboard of the passenger side in the car. The officers then asked to see the female passenger's purse. It contained more pills and a .38 caliber revolver. She was arrested. At about that time, the officers found a crumpled brown paper bag containing more pills and a small bottle of clear liquid. McKessick was then placed under arrest for possession of prohibited drugs.

The facts of this case are very similar to those in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). We affirm on authority of that case.

McKessick argues that the district attorney made improper and prejudicial remarks during closing argument. We have examined carefully the portions of the closing argument McKessick's counsel objected to and find that his objections were sustained or the argument made was not error to reverse.

■■■■ McKessick contends that the State failed to prove all the averments in the indictment. The indictment stated that the defendant unlawfully possessed bihphetamine "20" d-amphetamine and dl-amphetamine and methamphetamine hydrochloride, stimulating drugs. The State concedes that there was a misspelling of bi-phetamine 20 in the indictment. The indictment spelling—"bih phetamine" contained an extra "h." Biphetamine 20 is the trade name. Biphetamine 20 contains d-amphetamine and dl-amphetamine. These two chemicals followed the trade name of the drug in the indictment as descriptive terms. Before an objection because of false grammar, incorrect spelling, or mere clerical error is entertained, the court should be satisfied of the tendency of the error to mislead. Sanders v. State, 278 Ala. 453, 179 So.2d 35 (1965); Title 15, Section 231, Code of Alabama, 1940.

Having examined the record in this cause, and having considered the argument of counsel concerning alleged prejudicial error, we are of the opinion that no error

to reverse is shown and that the judgment of conviction is due to be affirmed.

Affirmed.

MERRILL, COLEMAN, HARWOOD, and McCALL, JJ., concur.

BLOODWORTH, J., concurs specially, with which HEFLIN, C. J., concurs.

FAULKNER and JONES, JJ., dissent.

BLOODWORTH, Justice (concurring specially):

I concur in the opinion of Mr. Justice Maddox which affirms the conviction of the defendant because, in my judgment, the testimony set out in his opinion clearly shows that there was "probable cause" to stop and arrest defendant. Thus, the search and seizure was reasonable since it was incident to a lawful arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1961); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

HEFLIN, C. J., concurs.

FAULKNER, Justice (dissenting).

I dissent from the majority opinion on the question of unlawful search and seizure. The majority base their holding on this point of law on Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. I fail to see any remote resemblance to *Adams* in this case as authority for upholding the search of McKessick's automobile.

In *Adams* a police officer, acting on information given him in person by an informer who was alleged to be credible, requested the defendant, who was sitting in a parked car, to open the door. The defendant lowered the window and the officer reached into the car and found a loaded handgun (which was not visible from the outside) in the defendant's waistband, *in the exact place the informer said it would be.* Thereupon, the defendant was arrest-

ed for unlawful possession of a handgun. A search incident to the arrest was made and substantial quantities of heroin were found on the defendant's person and in the car.

The majority in *Adams* recognized on authority of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, that an officer making a reasonable investigatory stop may conduct a limited protective search for concealed weapons when he has reason to believe that the suspect is armed and dangerous. This is the "stop and frisk" doctrine and its purpose is not to discover evidence of crime, but to allow the police officer to pursue his investigation without fear of violence.

The majority in *McKessick* states that "the facts of this case are very similar to those in Adams v. Williams" (citation omitted). The facts are very dissimilar to *Adams.*

In *Adams* the informer gave information to the police officer in person that the defendant had a gun. In *McKessick* the informer gave his information over the telephone that McKessick was a *dealer* in narcotics—not that he was in possession of narcotics.

In *Adams* the search was the incident to the lawful arrest for possession of the gun. In *McKessick* the search was not the incident to a lawful arrest.

The officers had no valid reason to stop McKessick. They had no reason to believe that McKessick was armed and dangerous; they had no reason to fear for their lives. The officers had ample time to secure a search warrant as it appears from the record that McKessick was followed by officers for more than an hour in unmarked cars; it did not appear that he was about to leave town. And, the officers who were following McKessick in unmarked cars summoned a police patrol car to stop McKessick, who had not even committed a traffic violation. They had him stopped because fog was moving in and they feared they might lose him. This was an unwar-

ranted intrusion into the life of a citizen. I do not believe the United States Supreme Court intended to extend the stop and frisk doctrine to cases where there is no information that the suspect is armed and dangerous. In *Adams,* Mr. Justice Rehnquist said that "So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." No facts appear in this case that would have entitled the officers to make a forcible stop. The glaring defects in the informer's tip were that it was not shown that he was reliable on the subject of narcotics; that the suspect was in possession of narcotics; that he had seen the narcotics; how he had obtained his information; that his information came from a reliable source.

In my opinion whatever credibility the informer's tip had was lost when McKessick picked up the woman passenger. His tip failed to include that type of information. From that time on the officers were acting on mere suspicion. Indeed, the entire conduct of the officers from the use of binoculars to observe McKessick to the time they had a patrol car stop him, indicates that they were acting on mere suspicion and not on the basis of the informer's tip. The search of the woman passenger's purse appears to have been made without her consent. The gun found in her purse could have been there by virtue of a permit to carry it. A permit to carry a gun is easily obtained in Alabama. She was not questioned as to whether she had a permit. The information that she had a gun or that McKessick would pick up someone with a gun was not included in the informer's tip.

A search is good or bad when it starts and does not change its character because it turns out to be successful. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. Thus, when a police officer stops an automobile, he either must have probable cause to believe illegal con-

traband is contained therein (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543) or must know or have probable cause to believe the occupants of the automobile have committed a violation of law. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. The requirement of probable cause has roots that are deep in our history. It has long been established that common rumor, report, suspicion, or even strong reason to suspect have never been adequate grounds to support probable cause. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

The majority decision today tears a big hole in the Fourth Amendment. It should be instantly repaired.

JONES, Justice (dissenting).

I am in complete accord with the dissenting opinion filed by Mr. Justice Faulkner. Because of my dissent in the recent case of Shipman v. State, [Ms.], 1973, 291 Ala. 484, 282 So.2d 700, which might at first glance appear inconsistent with the dissent in the instant case, I have chosen to make these additional comments.

Under the facts in *Shipman,* the police officer had an extraneous, valid reason to stop and question the occupants of the vehicle and, in my opinion, probable cause existed when the defendant made the package containing white powder the object of hiding in the plain view of the officer; and, consequently, the "plain view" exception was operative to validate a warrantless seizure.

In the instant case, the "plain view" exception has no field of operation. I have again reviewed with painstaking care our recent case of Daniels v. State, 290 Ala. 316, 276 So.2d 441, in which Mr. Justice Bloodworth, speaking for a unanimous court, set out the "warrantless" exceptions, and I am unable to fit the facts of the instant case into any of the six exceptions enumerated in *Daniels.*