UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie Fred BATY, Defendant-
Appellant.

No. 73–2391
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1973.

Rehearing Denied Nov. 19, 1973.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

C. Lawrence Jewett, Atlanta, Ga. (Court appointed), for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Gale McKenzie, Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Willie Fred Baty was tried before a jury and found guilty on two counts of unlawfully possessing material stolen from the mails with knowledge of its felonious character, in violation of 18 U.S.C. § 1708 (1970). The district court imposed concurrent three-year sentences. We affirm.

On the afternoon of September 8, 1972, Sgt. Larry West and his partner, Sgt. Gordon, both of the East Point, Georgia Police Department, were cruising in their patrol car when they received a radio dispatch reporting a residential burglary in progress and a companion look-out bulletin for two black males, one on foot and one in a car. As the officers arrived on the scene, they observed one black man at the wheel of an automobile that was leaving the driveway of the reported burglary site and another black man running away on foot. The latter, apprehended one block away, was the defendant, Willie Fred Baty. Sgt. West stopped the vehicle and asked the driver, Gary Williams, to step out and identify himself. As this was done, West saw a gun barrel protruding from beneath the armrest in the vehicle's front seat. After retrieving this pistol, Sgt. West then proceeded to conduct a more thorough search, which uncovered another pistol beneath the driver's seat. The search also produced, among other items, a driver's license and the automobile's registration in the name of Willie Fred Baty and two stolen checks, which lay partially exposed in opened envelopes beneath the vehicle's floor mat. Baty was tried on a two-count indictment charging: (1) unlawful possession of a United States Treasury check, which had been stolen from the mail, knowing the same to have been stolen, and (2) unlawful possession of a commercial check, also stolen mail matter, knowing it to

have been stolen *from the United States Mail* (emphasis added).

At the trial, James Therrell, the designated payee on the Treasury check, testified that he had received similar retirement checks through the mail every month for ten years until August 31, 1972, the date printed on the check described in Count I. The other check had been sent by certified mail to Alice G. Glover, who testified that she regularly received similar paychecks from Kelly Girl Services through the mail. Both payees confirmed that they had been expecting but never received these checks and that it was beyond the realm of possibility for the envelopes to have arrived at their respective post office boxes and been mislaid thereafter. Both checks were found in envelopes bearing U.S. post marks and the envelope containing the check involved in Count II clearly disclosed its certified mail status.

Several days after the arrest, Anthony M. Cumberworth, a special investigator for the Postal Service, interviewed the defendant, who was incarcerated on burglary charges, in the detective's office at the East Point Police Department. Cumberworth testified that, after he had identified himself and his mission and advised the defendant in detail of his *Miranda* rights, Baty voluntarily admitted his custody of the checks and stated Williams, his partner, knew nothing about them. Baty gave the postal investigator this story. He first encountered the checks when they fell out of the purse of a young female who had been in his car. At that time the checks were in unopened and sealed envelopes. The young woman, with whom Baty was only slightly acquainted, disclaimed ownership of the letters and told him to keep them. Because he knew that his passenger was not the addressee on either of the unopened envelopes, Baty surmised that they must have come from the mails. Although he originally intended to return them to the mails he confessed that, overtaken by greed, he had opened the envelopes in order to see if the checks could easily be cashed.

Before this court, Baty claims that the district court erred in (1) denying his motion to suppress the evidence seized from the automobile, (2) determining that his admissions were voluntary, (3) charging the jury about the facts that could properly be inferred from unexplained possession of recently stolen property, and (4) overruling defendant's motion for directed verdict of acquittal.

█ █ Not only does Baty argue that the warrantless search of the automobile was unreasonable, but also that the officers' failure to provide him with an inventory of items seized during the search, as required by Ga. Code Ann. § 27–302 (1972), rendered such fruits inadmissible at trial. In view of the burglary report and the officers' personal observation of the automobile being driven from the reportedly burglarized premises by a driver meeting the general description of the burglars, the policemen were faced with the conditions precedent—probable cause and exigent circumstances—that validated and justified their subsequent actions in stopping the fleeing vehicle and investigating the suspicious circumstances. United States v. Allen, 472 F.2d 145 (5th Cir. 1973); United States v. Ragsdale, 470 F.2d 24 (5th Cir. 1972). Moreover, when confronted with the pistol barrel in plain view, Sgt. West was clearly warranted in entering the vehicle to retrieve the weapon. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); United States v. Gulledge, 469 F.2d 713 (5th Cir. 1972); United States v. West, 460 F.2d 374 (5th Cir. 1972). Finally, the confirmed observation of the weapon supplied the officers with additional cause to suspect that the vehicle was linked to the reported crime and to conduct a more thorough search of its interior and trunk. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 41 (1970); United States v. Ragsdale, *supra*.

Assuming without deciding that a state fashioned exclusionary rule would bind a federal court to forestall the search for truth, there can be no error

in admitting the subject evidence since Georgia courts have never held that a failure to furnish the defendant with the inventory required by Section 27–302 would operate to exclude the recovered evidence from the trial. Lewis v. State, 126 Ga.App. 123, 190 S.E.2d 123 (1972); Williams v. State, 125 Ga. App. 170, 186 S.E.2d 756 (1971). Such an after-the-search procedural deficit is certainly not a violation of any Fourth Amendment right.

■■ Baty next raises the incongruous contentions that the trial court erroneously found defendant's admissions to be voluntary and admissible as evidence, and that if such admissions were properly received, they rendered the trial court's jury charge improper. At a Jackson v. Denno hearing, Cumberworth testified that he advised Baty in detail as to his *Miranda* rights and that the defendant willingly entered into a discussion of the checks. Although Baty may have understandably been upset at his predicament, the trial court correctly determined from all the evidence that the admission was voluntary and that the jury should be allowed to hear the statements. United States v. Harvey, 483 F.2d 448 (5th Cir. 1973). Furthermore, Baty contends that the trial judge erred when he charged the jury it could infer that Baty had knowledge of the check's illicit character from his unlawful and unexplained possession of them while they were recently stolen. This contention is wholly without merit under Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Following the command of *Barnes,* this court has unequivocally upheld use of an "unexplained possession" instruction where the fact of possession of recently stolen property is left inadequately explained. United States v. Jiminez, 484 F.2d 91 (5th Cir. 1973); United States v. Howard, 483 F.2d 229 (5th Cir. 1973). Baty's possession of the checks was undisputed and such possession was explained only in the sense that his admission established that he knew them to have been stolen. While it is true that the portion of the court's instruction informing the jury that participation in the larceny could be inferred from unexplained possession is not usually found in such directions, it was harmless here. It did not ascribe any greater guilty knowledge to Baty than would the usual charge of knowing possession. The jury was still left free to draw its own inferences from all the evidence. United States v. Roberts, 483 F.2d 226 (5th Cir. 1973).

■■ Baty finally argues that the district court erred in rejecting his motion for a directed verdict of acquittal. On review of such motion, "the test is whether, taking the view most favorable to the Government, a reasonably minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Hill, 442 F.2d 259, 261 (5th Cir. 1971). In United States v. Martinez, 466 F.2d 679 (5th Cir. 1972), we held that guilt under 18 U.S.C. § 1708, the statute involved here, is established when the government proves that the mailed material has actually been stolen from the mail and that the accused possessed the matter, knowing it to have been stolen. These two elements are reflected in Count I of the indictment. The government admits, however, that the second count, which also describes an offense within the parameters of Section 1708, contains wording that imposes a more rigorous burden of proof on the prosecution, since it alleges not simply that the defendant knew the mailed material was stolen, but that he knew it "to have been stolen from the United States Mail." *See* United States v. Davis, 461 F.2d 83 (5th Cir. 1972), cert. denied, 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1973); *compare* United States v. Trexler, 474 F.2d 369 (5th Cir. 1973). Because we find that the district court properly refused to direct a verdict of acquittal as to Count I, we invoke the concurrent sentence doctrine so as to pre-

termit consideration of appellant's contentions with regard to Count II, and focus our examination instead on Count I and the evidence adduced thereunder. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1956); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed 1774 (1943); McKlemurry v. United States, 478 F.2d 1185 (5th Cir. 1973); United States v. Stone, 472 F.2d 909 ,(5th Cir. 1973).

■ That the Treasury check, which was the subject of Count I, was actually stolen from the mails was adequately established by the testimony of the payee, Therrell, and by the undisputed fact that the instrument was recovered in its postmarked envelope. "While it may be theoretically possible that the [check was] stolen . . . after receipt, the prosecution need not affirmatively disprove every conceivable alternative theory. Where, as here, a letter containing a [check] was properly mailed and never received by the addressee but the [check] was found in quite improper and misusing hands it can be found that the [check] had been stolen from the mail in the absence of any other explanation being proffered." United States v. Matzker, 473 F.2d 408, 411 (8th Cir. 1973) (citations omitted). See Wade v. United States, 457 F.2d 335 (9th Cir. 1972). In addition, Baty's admission, the trustworthiness of which was adequately corroborated by the other independent evidence, United States v. Abigando, 439 F.2d 827, 832-833 (5th Cir. 1971); United States v. Seckler, 431 F.2d 642 (5th Cir. 1970), coupled with his unexplained possession of the recently purloined property, were circumstances from which the jury could reasonably conclude that he knew the checks had been stolen. United States v. Liggins, 451 F.2d 577 (8th Cir. 1971). Consequently, there was more than sufficient evidence to support Baty's conviction on Count I. United States v. Roberts, *supra.*

The decision of the district court is

Affirmed.