**Bobby Jean McKISSICK, Petitioner-Appellant,**

v.

**Ray D. BRIDGES, Sheriff, Respondent-Appellee.**

**No. 75–1360.**

United States Court of Appeals, Fifth Circuit.

March 11, 1976.

Joseph O. Kulakowski, Mobile, Ala. (Court appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., Otis J. Goodwyn, Sara M. Greenhaw, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Petitioner appeals from denial of habeas relief, after evidentiary hearing, from an Alabama state conviction of unlawful possession of drugs. The conviction was affirmed on direct appeal.[1]

The main issue is validity of a warrantless search of the automobile occupied and driven by petitioner.

Between 1 a. m. and 2 a. m., a reliable informant gave to Lt. Williams, a Mo-

1. *McKessick v. State,* 291 Ala. 564, 284 So.2d 516 (1974).

bile, Alabama, police officer, the present location and physical description of a man who he said was "in Mobile dealing in narcotics." The informant described the man as a white male, with black hair, dressed in a blue suit, approximately five feet 10 inches tall, weight 175–180 pounds, approximately 38 years old. He stated that the man was driving a tan, 1967 Plymouth automobile, with Alabama plates bearing a given number, and was then in the vicinity of "the Loop on Highway 90."

Lt. Williams went to the Loop area in an unmarked patrol car, located a vehicle matching the description and tag number he had been given, and followed the car as it proceeded west and away from town. The driver of the vehicle, subsequently identified as petitioner, fit the description given by the informant. There were no passengers in the car. Williams radioed for another unmarked patrol car to assist in following the vehicle. Petitioner turned off Highway 90, passed through a night club parking lot, and continued west on Highway 90. The officer kept the vehicle in sight at all times. Petitioner was still alone. After driving a short distance further, petitioner stopped at a service station, got out of his car and entered the station. Lt. Williams drove to the opposite side of the highway and began observing petitioner with binoculars. Sgt. Bishop arrived in an unmarked car and parked nearby.

Lt. Williams saw the petitioner make three phone calls and also talk to the service station attendant. Sgt. Bishop saw a green Mustang drive into the station and park five or six feet from the office door. He saw petitioner talk to the occupants of the car for three or four minutes and then make a telephone call which lasted several minutes. He then saw petitioner return to the Mustang and observed the occupant on the passenger side leave the Mustang and get into petitioner's car.

After petitioner had been at the station approximately 45 minutes Lt. Williams saw him get into his car and begin traveling east on Highway 90. There were now two people in the car.

The two officers began following petitioner. Because of foggy weather conditions Lt. Williams radioed for a police unit with outside lights to stop petitioner's car. Officer Lund responded and used his outside lights to make the stop. Petitioner got out of his car as Williams and Lund approached. Williams obtained petitioner's driver's license and asked him "where he was coming from, where he was going, and where he lived." Williams then talked to the passenger, a white female, and recognized her as a known narcotics user. She became angry after he had asked her several questions and opened her door to get out. As she was getting out of the car, Lund saw her throw something to the ground and conveyed his observations to the other officers. The officers discovered between 25 and 50 pills, tablets and capsules, and an unlabeled plastic vial, lying on the ground near the open door. Williams moved the woman to the rear of the car and asked her for her purse. She opened it, removed several items including a .38 revolver, and laid them on the rear of the car. They looked in her purse and saw more pills and capsules. She was then arrested for carrying a pistol without a permit.

Sgt. Bishop was gathering the pills on the ground during this time. He looked through the open door and saw three pills on the floorboard on the passenger's side and noticed a brown paper bag sticking out from under the passenger seat. He took it out and examined it and found it contained two containers of sterile water and 103 tablets. The officer showed the bag to Williams. Williams arrested the petitioner and instructed Sgt. Bishop to search the car. The arrest was within five to 10 minutes of the stop. Bishop discovered a box of assorted pills, tablets and capsules in the glove compartment.

The District Judge was plainly correct in his conclusions that there was sufficient evidence to justify an investigatory stop and that, once the stop was made,

the ensuing events justified arrest of petitioner and gave probable cause to search the vehicle. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *U. S. v. Allen,* 472 F.2d 145 (CA5, 1973); *U. S. v. Baty,* 486 F.2d 240 (CA5, 1973); *U. S. v. Unverzagt,* 424 F.2d 396 (CA8, 1970). The District Judge was also correct in his view that there were exigent circumstances. The car was stopped adjacent to a major thoroughfare, it was after midnight on a foggy night, the officers had learned the woman passenger was armed, and they did not know the location of the Mustang from which the woman had alighted nor of its driver.

Other contentions were not raised before the court below and are not properly before us.[2]

Affirmed.

---

2. Alleged improper conduct by the prosecutor, alleged improper constitution of the jury, and the fact that the statute under which defendant was convicted has subsequently been repealed. Defendant also claims that he was in possession of the drugs in his professional capacity as a pharmacist. This issue was submitted to the jury and decided against him.