TYSON, Judge.
Charles Ray Clency was indicted for the first degree robbery of Mrs. Imo Chatham. After hearing the evidence and receiving full instructions with reference first and second degree robbery, the jury found Mr. Clency, the appellant, guilty of second degree robbery. In a subsequent sentencing hearing the trial court, pursuant to the Alabama Habitual Felony Offender Act, sentenced appellant to life imprisonment.
Appellant’s motion for a new trial was duly denied, and this appeal followed.
The evidence is undisputed that Mrs. Imo Chatham was an employee of the Wasson Drug Company on 10th Avenue North in Birmingham, Alabama, when it was robbed by two men on the morning of October 8, 1980. Shortly after 9:00 a. m. Mrs. Chat-ham, a clerk-cashier working in the front of the store, assisted one of these men who said he needed some hair coloring. She handed him for his consideration, a box of “Nice and Easy” hair coloring, but he did not make a purchase. Instead, he asked to use the telephone, which Mrs. Chatham retrieved for him from behind the sales counter in the front of the store. He never used the phone, but kept “looking around,” especially at the front door. Within a “very few” minutes after this first man had entered, a second man came through the front door in a “stooped” position and proceeded, in that position, to the rear of the store. This second man was wearing a hat and was holding a rag over his face. Mrs. Chat-ham followed him toward the rear of the store. When he reached the pharmacy counter, he pointed a pistol at Mr. Peden, the pharmacist on duty, and demanded certain drugs.
When Mrs. Chatham realized what was happening she quietly returned to the front of the store and activated the silent alarm. It was at this point that the first man, the one she had helped with the hair coloring and the telephone, stepped behind the sales counter and demanded that she hand over all the money in the cash register. Mrs. Chatham complied with his demands because she was “totally petrified” and “just horrified” and had “never been so scared in her life.” (R. 108).
This man in the front of the store then began shouting instructions to the gunman in the rear of the store. He told the gunman to make sure Mr. Peden did not have a gun and he reminded the gunman of several specific “drugs” that he should obtain from the pharmacist. He further instructed him, when the gunman had returned to the front of the store, to remove the money from the other cash register.
The two men then fled together on foot.
When the police arrived to investigate the crime, Mrs. Chatham showed them the box of “Nice and Easy” hair coloring that the man in the front of the store had handled, and both she and Mr. Peden gave them descriptions of both robbers.
Mrs. Chatham later identified from a police “line-up” this appellant, Charles Clency, as the man who handled the box of hair coloring, who asked to use the telephone, who demanded that she hand over money from the cash drawer, and who directed the gunman during the final stages of the robbery. She also made a positive identification of this appellant in court.
The appellant was further identified through the analysis of “latent” fingerprints removed from the box of hair coloring handled during the robbery. An evidence technician “lifted” fingerprints from the box and deposited these “lifts” in a police lock box. (R. 137). These “lifts” were removed from the lock box by the fingerprint technician who subsequently matched these “latent” prints to the “known” fingerprints of this appellant. (R. 159-161).
The appellant did not take the stand in his defense. His sole defense was that of “alibi”. His employer, Ishmel Jones testi *716 fied that the appellant was at work from 8:00 a. m. to 12:30 p. m. on October 8, 1980. Mr. Jones remembered that day because it was the last day the appellant worked for him. The appellant’s wife testified that that day the appellant left for work at 7:30 a. m. (as usual) and returned from work at 4:30 p. m. (also as usual.) She further testified that the appellant also worked for Mr. Jones for several days after October 8 (directly contradicting Mr. Jones' testimony-)
The jury apparently disregarded this “alibi” evidence and concluded that the appellant was indeed guilty of this robbery of Mrs. Chatham.
I
Appellant predicates two of his arguments on appeal on the theory that there were two independent robberies that day in the Wasson Drug Store. He claims that there was evidence to indicate that the robbery of Mrs. Chatham in the front of the store was not connected with the robbery of Mr. Peden in the rear of the store.
A
Under this theory of the evidence he, therefore, contends it was error for the trial court to permit, in appellant’s trial, evidence of the events involving the gunman and Mr. Peden in the rear of the store.
Contrary to appellant’s assertions, however, all of the evidence of the entire incident indicates that the two men were acting in concert. In fact, the man later identified by Mrs. Chatham as this appellant directed the gunman’s activities during the final stages of the robbery. Any doubt that the two men were partners was eliminated at that point and confirmed when they fled together on foot.
The appellant offered no evidence that the robbers acted independently. Instead, his defense was that of “alibi”.
The evidence of the entire incident as witnessed by Mrs. Chatham and Mr. Peden was, of course, admissible. In our view, this was one continuous transaction.
B
In furtherance of his unfounded “independent robberies” theory, the appellant requested several written jury charges (Numbers 38,40, 41 and 44) on the lesser included offenses of third degree robbery and second degree theft. Had there been evidence that the appellant acted independently, or that the appellant did not take the money “from Mrs. Chatham’s person” and did not “use force,” then correct charges with reference these lesser included offenses might have been warranted.
However, all four charges were properly refused because there was no such evidence of either lesser offense. The charges were not applicable to the evidence of the case. Taylor v. State, 408 So.2d 551 (Ala.Cr.App.), cert. denied, 408 So.2d 555 (Ala.1981), and cases therein cited. Furthermore, several of the charges were confusing or included vague or incorrect statements of law.
II
Appellant’s contention that the evidence of prior felony convictions presented during the sentencing hearing was insufficient to enhance his punishment under Alabama’s Habitual Felony Offender Act is not supported in the record. Six exhibits, copies of two certified judgment entries and four certified trial docket sheets, were presented to the trial court (R. 244) as evidence of appellant’s prior convictions. Though the use of one of these “priors” was questioned (because of appellant’s age at the time of conviction), the proof of all six was adequate. See; Thatch v. State, 397 So.2d 246 (Ala.Cr.App.), cert. denied, 397 So.2d 253 (Ala.1981) and cases therein cited (general use of certified judgment entries); Act Number 1037, General Acts of Alabama 1971, and Gilbert v. State, 410 So.2d 473 (Ala.Cr.App.1982) (use of trial docket sheets in Jefferson County).
The trial court's sentence of life imprisonment, in light of this proof of at least three prior felony convictions, was proper under the Alabama Habitual Felony Offender *717 Act. Watson v. State, 392 So.2d 1274 (Ala.Cr.App.), cert. denied, 392 So.2d 1280 (Ala.1980).
III
Appellant further asserts that the indictment was fatally defective because it contained a misspelling of the word “escaping,” and because it failed to aver that the appellant would be sentenced pursuant to the Habitual Felony Offender Act.
Appellant claims that the indictment was misleading because the word “escaping” was spelled “exceping.” (Interestingly, in brief the appellant misquotes the misspelling as “excepting”.) In any event, whether this was a spelling error or a typographical error (it appears to be the latter), it is not fatal here because it was not prejudicial to the substantial rights of this appellant. Section 15-8-4, Code of Alabama 1975; McKessick v. State, 291 Ala. 564, 284 So.2d 516 (1973). The word “escaping” was in a clause in the indictment that was, under the circumstances of this ease, unnecessary and, thus, surplusage. The remainder of the indictment fairly and adequately charged this appellant with the robbery in question. Johnson v. State, 405 So.2d 149 (Ala.Cr.App.1981), and cases therein cited.
Furthermore, this court has recently held that the indictment need not state that sentencing will be pursuant to the Habitual Felony Offender Act. Holley v. State, 397 So.2d 211 (Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala.1981).
IV
The remainder of appellant’s assertions on appeal are without merit either because they are unfounded or unsupported in the record or because the trial court properly exercised its discretion, with reference thereto.
A
Appellant challenges the clarity of the trial court’s instructions to the jury on “complicity” (R. 220, 235, 236). We have reviewed these instructions and have found nothing misleading or in any way harmful to this appellant.
B
The appellant moved for a mistrial when he discovered during closing arguments that a blackboard used to diagram the scene of the crime had been removed. The blackboard had been used by both parties in questioning witnesses and had been viewed by the jurors. However, it had not been introduced into evidence. We agree with the trial court that the said blackboard’s unexplained disappearance did not warrant a mistrial.
C
Appellant contends that the fingerprint card (from the police files) which was used in identifying the “latent” fingerprints on the box of hair coloring was unreliable as evidence. However appellant failed to preserve this issue for our review. He did not challenge the authenticity of this card at trial.
Moreover, for aught that appears in the record, the fingerprint card was properly identified as that of this appellant. The officer who made the card identified it in court and stated it had not been altered. The card itself contained the appellant’s signature, his date of birth and other vital statistics obtained from the appellant when the card was made (i.e. on the day of his arrest). Cummings v. State, 356 So.2d 779 (Ala.Cr.App.1978); Little v. State, 357 So.2d 379 (Ala.Crim.App.1978).
D
The appellant further claims that he did not receive proper notice of the state’s intention to proceed with sentencing under the Habitual Felony Offender Act. Such a claim is not supported in the record.
Copies of the notice served by the state on the day of the trial are included in the record. (R. 265). For aught that appears this notice was sufficient. Rule 6(b)(3)(ii), Temporary Rules of Criminal Procedure; Smith v. State, 401 So.2d 251 (Ala.Cr.App.), cert. denied, 401 So.2d 257 (Ala.1981).
*718 E
Appellant’s complaint that Mrs. Chatham’s in-court identification of appellant was “tainted” because of a suggestive “line-up” identification is unfounded and unsupported by the record. We know of no rule prohibiting the display of more than one “suspect” in a single “line-up.” Furthermore, there was no evidence in the record that any aspect of the “line-up” identification impermissibly prejudiced this appellant. See Childers v. State, 339 So.2d 597 (Ala.Cr.App.), cert. denied, 339 So.2d 601 (Ala.1976).
F
Appellant also argues that reversible error occurred when the state asked Mr. Peden if he had identified the “gunman” in a “line-up”. This question was never answered because the trial court sustained appellant’s objection thereto. The harm (if any) to this appellant was thereby avoided. No error appears.
This case is therefore, due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.