**Luther L. AUSTIN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 21698.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 5, 1968.

Decided March 7, 1969.

---

Mr. Carl V. Lyon, Washington, D. C. (appointed by this court) for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Charles A. Mays, Asst. U. S. Attys., were on the brief, for appellee. Mr. James E. Kelley, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

## SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The sole question presented on this appeal, from a conviction of robbery,[1] is whether the trial judge erred in barring[2] certain testimony by appellant which was proffered as part of an ongoing effort to impeach a police officer who was a principal witness for the Government. The basis of the attempted impeachment was appellant's claim that prior to the offense on trial a fellow officer had accepted a bribe, and that appellant had implicated the officer-witness in the affair. With this involvement of perhaps the most despicable charge that can be lodged against a public servant—a charge here that has never been proved[3] —we leave the officers nameless in this opinion.

On the night of October 6–7, 1967, two men assaulted the complainant on a street, robbed him of 25 cents and ran away. The scuffle attracted the attention of an off-duty policeman, Officer A, who was then in his car at a nearby intersection awaiting a change of traffic lights. From previous contacts with appellant,[4] Officer A, so he was later to testify, recognized appellant as one of the robbers. The officer then parked the car, and joined other police officers and the complainant in a canvass of the area. Appellant and the man who became his co-defendant[5] were soon spotted, identified as the offenders and placed under arrest. At their trial, appellant and his co-defendant were identified by the complainant and Officer A as the parties who committed the robbery. The jury, discarding their protest that they were innocent and were merely returning to a night club when arrested, found them guilty.

When defense counsel voiced his desire to explore Officer A's possible bias toward appellant, the trial judge held a hearing, out of the jury's presence, at which the officer was quizzed extensively by counsel on both sides, and after which the judge defined the latitude which the proof as to bias would be indulged. The trial resuming before the jury, Officer A on direct examination detailed his observations and activities relative to the robbery, and on cross-examination responded to questions probing

---

1. D.C.Code § 22–2901 (1967 ed.), since amended (Supp. I 1968).

2. See note 16, *infra.*

3. See notes 12 and 14, *infra.*

4. See note 9, *infra,* and the text *infra* at notes 9–11.

5. The co-defendant was convicted of assault with intent to commit robbery.

his knowledge of the alleged bribery [6] and his relationship with the policemen allegedly bribed, Officer B.[7] The facts elicited in this fashion, never sought to be contradicted by appellant,[8] laid before the jury a picture rather full in both respects.

During several months in the first half of 1967, it developed, Officers A and B were assigned as partners in the operation of a police wagon. One day they stopped a car driven by appellant and discovered that he was unable to produce an operator's license or a registration card for the vehicle.[9] Officer A testified that he was disposed to arrest appellant, who on that occasion intimated a willingness to pay a small sum of money,[10] but that Officer B took charge of the matter and apparently dropped it, and somewhat later was indicted for bribery on appellant's accusation.[11] Officer A was thereafter called before his precinct captain and with him the bribery was discussed,[12] and from this, Officer A admitted, he assumed that appellant had lodged the bribery charge against him as well as Officer B.[13] The latter was suspended from the police force,[14] thus terminating their joint tours of duty and seemingly all other contacts also.[15]

During the presentation of the case for the defense, counsel for appellant proffered the latter's testimony on one as-

6. See the text *infra* at notes 9–13.

7. See the text *infra* at notes 14–15.

8. As hereinafter more fully appears, see the text *infra* at note 16, appellant endeavored, not to refute any aspect of Officer A's testimony on the bias issue but only to state that he had implicated Officer A in the bribery charge, something Officer A had said he assumed appellant had done but was unable to attest from his own knowledge that he had actually done.

9. Developed at the hearing before the trial judge, but not at the trial before the jury, was the fact that even prior to the traffic incident Officer A had arrested appellant on a robbery charge. Officer A's testimony before the jury on this topic indicated merely that he had previously known appellant.

10. Officer A testified that appellant "asked me if he could give me anything. He said he had only $10 or $15 or something like that. I told him I didn't want any of his money, that I had more money than he did, and if I handled his case I was going to transport him to the Second Precinct." The officer stated later that he did not consider this an attempt to bribe, but that he reported it to a superior.

11. From the evidence adduced at the hearing before the trial judge, it seems that the traffic incident precipitated a subsequent meeting of appellant with Officer B involving the use of marked money and that Officer B's indictment was founded on the latter meeting. It appears without contradiction that at the time of that meeting Officer A was in Alabama.

12. Presumably the accusation was made to some police official. No disciplinary or criminal action was initiated against Officer A.

13. In its most relevant part, cross-examination on this subject was:
    Q. Officer [A], isn't it a fact that [appellant] made an allegation not only against your partner but also yourself in regard to a charge of bribery?
    A. Sir, I was told that [appellant] made an allegation. [Appellant] never made an allegation before me, so I don't know what he told them.
    *     *     *     *     *
    Q. So you knew [at the time of the offense on trial] that [appellant] had made an allegation not only against your partner but to you. Isn't that correct?
    A. No, sir, that is not correct.
    Q. Did you have reason to believe that he had made this allegation against you?
    A. I gathered as much from the conversation, but I didn't have any facts to substantiate it.
    Q. You gathered as much?
    A. Yes, sir.

14. We are advised that Officer B was acquitted by a jury on the bribery charge.

15. Officer A testified that Officer B was not a social friend but only an assigned duty partner.

pect of the bias issue. Appellant would state, it was represented, that he did implicate Officer A in the bribery. Concurring in the Government's view that the officer's belief on that score rather than the actual fact was the important criterion, the trial judge denied the request.[16] We hold that, under the circumstances, the judge's ruling was correct, and that the conviction must accordingly be affirmed.

Our decisions reflect great solicitude for an endeavor by the accused to establish bias on the part of a prosecution witness.[17] They establish the propriety of the showing either by cross-examination or by extrinsic evidence,[18] and indicate the broad range over which the inquiry may extend.[19] We have admonished, however, that when the accused has been afforded a reasonable opportunity to make the point, the trial judge has discretionary authority to limit the scope of the proof.[20] And courts have traditionally exercised their inherent power to confine the impeaching effort to evidentiary items possessing a potential for connoting bias.[21]

Here the trial judge permitted defense counsel's cross-examination of Officer A not only in regard to the traffic episode but also in reference to the witness' relationships with Officer B and with appellant himself. Among the topics of interrogation was the degree to which Officer A was alert to the consideration that appellant had implicated him as well as Officer B in the alleged bribery. Officer A admitted that he had assumed that appellant had similarly accused him of the wrongdoing since he had been questioned on the subject by his precinct captain, explaining, in apparent candor, that that was as much as he really knew.[22]

What appellant wanted to say, however, and what the trial judge ruled he would not be permitted to say, was that he actually did inculpate Officer A. The difficulty, however, is that this testimony would not have increased Officer A's awareness, when on direct examination he recounted the details of the robbery, that appellant's accusation also extended to him. Bias is a state of mind, and only those events which can influence the mind at the moment of testifying are relevant to a demonstration of

16. For purposes of this appeal, we adopt the construction appellant places on the judge's action although there is room for an argument that appellant's trial counsel dropped his request after the judge called attention to the risks incidental to appellant's testifying on that subject.

17. Tinker v. United States, 135 U.S.App. D.C. —, 417 F.2d 542 (Mar. 3, 1969); Wynn v. United States, 130 U.S.App. D.C. 60, 397 F.2d 621, 623–624 (1967); Villaroman v. United States, 87 U.S. App.D.C. 240, 241, 184 F.2d 261, 262, 21 A.L.R.2d 1074 (1950); McFarland v. United States, 85 U.S.App.D.C. 19, 20–21, 174 F.2d 538, 539–540 (1949); Beach v. United States, 80 U.S.App.D. C. 160, 161, 149 F.2d 837, 838, cert. denied 326 U.S. 745, 66 S.Ct. 47, 90 L.Ed. 445 (1945); Ewing v. United States, 77 U.S.App.D.C. 14, 20–24, 135 F.2d 633, 639–643 (1942), cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943).

18. Tinker v. United States, *supra* note 17; Wynn v. United States, *supra* note 17, 397 F.2d at 624; Villaroman v. United States, *supra* note 17, 87 U.S.App.D. C. at 240, 184 F.2d 261; Ewing v. United States, *supra* note 17, 77 U.S.App.D.C. at 21, 135 F.2d at 640.

19. See the cases cited *supra* note 17. See also 3 J. Wigmore, Evidence §§ 949, 950 (3rd ed. 1940).

20. See Tinker v. United States, *supra* note 17, and cases cited in note 12, *supra.*

21. Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 487 (9th Cir. 1961), cert. denied 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1962); Whitney v. State, 154 Ind. 573, 57 N.E. 398, 399 (1900); State v. McCann, 43 Or. 155, 72 P. 137, 139 (1903). See also Jacksonville, T. & K. W. Ry. v. Lockwood, 33 Fla. 573, 15 So. 327, 329 (1894).

22. See note 13, *supra.*

bias.[23] The pertinent factor here was not what appellant did in the way of attributing bribery to Officer A, but what Officer A understood that appellant had done. The proffered testimony had no tendency to show that Officer A was any more knowledgeable as to the charge than he had already admitted that he was, and the judge was on sound ground in excluding it.

Affirmed.

23. See People v. Pickens, 61 Cal.App. 405, 214 P. 1027, 1028–1029 (1923).