UNITED STATES of America

v.

**John MOORE, Jr., Appellant.**

**No. 75–1484.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1975.

Decided Jan. 19, 1976.

William I. Harkaway, Washington, D.C. (appointed by this Court) for appellant.

John W. Polk, Asst. U.S. Atty., with whom Earl J. Silbert, U.S. Atty., John A. Terry, and James Rutherford, Asst. U.S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, HASTIE,* Senior Circuit Judge for the Third Circuit, and ROBB, Circuit Judge.

Opinion for the Court filed by Chief Judge Bazelon.

Dissenting opinion filed by Circuit Judge Robb.

BAZELON, Chief Judge:

Defendant was convicted of possession of narcotics with intent to distribute. The narcotics were found under the front seat of a car he and another man occupied. On appeal, the defendant challenges the legality of the search, the

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

sufficiency of the evidence of possession, and claims ineffective assistance of counsel.

Although not raised by the parties, the sentencing transcript reveals allegations of a sexual relationship between an important government witness and the defendant's wife. Accordingly, the court requested supplementary briefs on the following:

(1) the bearing, if any, these allegations may have on the issues of ineffectiveness of counsel and the sufficiency of the evidence of possession; (2) the obligation of the trial judge, if any, to act *sua sponte* when confronted with these allegations; and (3) whether the matter may be considered on appeal.

Responding to this request, the Government concedes, "The allegations regarding Detective Stewart raise questions which . . . can be satisfactorily resolved only by further proceedings in the trial court."[1] The Government·suggests the questions to be explored on remand are:

(1) whether the allegations regarding Detective Stewart are true,[2] and (2) whether, even if they are true, appellant was denied the effective assistance of counsel by his attorney's tactical decision not to explore these allegations during the trial.

In view of the vagueness of these statements and to avoid possible misunderstandings, we elucidate the state of the record on the matters to be considered on remand for the guidance of the district court.

## I

When asked if he had anything to say before imposition of sentence, the defendant told the court his court-appointed lawyer had "some very important evidence" which he kept secret during trial, namely that the defendant's mother and "two other [unidentified] persons who were present in the courtroom during trial" recognized Officer Stewart as the man who had been having an affair with the defendant's wife. (Tr. 319) Officer Stewart had testified that the defendant after arrest confessed that he had been "dealing" narcotics. (Tr. 99–102)

Recognizing his responsibility "to maintain proper standards of performance by attorneys representing defendants in criminal cases,"[3] the trial judge inquired of counsel what he had done to pursue the allegations concerning Officer Stewart. Counsel admitted that he had not consulted the defendant concerning this line of potential impeachment for fear that given the emotional trauma of trial it "would be a little too much for [the defendant] to bear," but said that he had told defendant's relatives to ask the wife about it. (Tr. 320) Counsel further stated that they told him she admitted the relationship but was afraid to testify; that when he later telephoned her, she denied it; and that in view of her denial, "I felt I was in a position I could not establish factually the existence of such a relationship." (Tr. 320). Later counsel expanded:

Under the law applicable to the situation, if your Honor please, in view of the evidentiary requirements I am faced with, I must concede to the Court while it does give me pause for concern, I gave it tremendous consideration during the course of the trial in terms of the tactical decision as to how this matter could be presented. At that time and again at this, I am convinced that there is no way we can factually establish from the available testimony that such a relationship did in fact exist. I have my own suspi-

---

1. Supplemental Memorandum of Appellee.

2. Of course, conflicts in testimony regarding the allegations are for the jury to weigh, as is their effect on Officer Stewart's credibility [footnote by the court].

3. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

cions, but, as your Honor knows, they, of course, would not be sufficient. (Tr. 321–22).

The trial judge observed that Officer Stewart's testimony had "nothing to do with whether or not [the defendant] had the narcotics on him." (Tr. 321). Contrary to the trial judge's recollection, the record discloses that the narcotics were not found "on" the defendant, but under the driver's seat of the automobile he was driving. (Tr. 78). The defendant testified that he had now known they were there when he got into the car with another man. (Tr. 189–91). Because of this testimony, the trial judge instructed the jury on constructive, as well as actual possession, over defendant's objection. (Tr. 266–69). Detective Stewart's testimony about the confession was material both to the constructive possession theory,[4] and with regard to intent to distribute.

## II

In *United States v. DeCoster*, 159 U.S. App.D.C. 326, 487 F.2d 1197 (1973), this court held a defendant is entitled to the "reasonably competent assistance of an attorney acting as his diligent conscientious advocate." In addition to adopting the ABA Standards for the Defense Function as one guide to implementation, we noted, *inter alia*, that

> Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. . . . In most cases, a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. . . . And, of course, the duty to investigate also requires

adequate legal research. 487 F.2d at 1204.

And while we abjured "second-guess[ing] strategic and tactical choices made by trial counsel," we held that "when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel." *Id.* at 1201.

This record, like that in *DeCoster*, "poses more questions about counsel's preparation and investigation than it answers." *Id.* at 1201. For example, we cannot discern from this record why counsel decided not to use the available testimony to impeach Detective Stewart; what investigation of these charges he had made; or what circumstances caused him to decide not to consult his client concerning this tactical decision.

■■■ Trial counsel did *not* tell the district court he declined to use the testimony concerning Detective Stewart because he was convinced the story had been concocted to aid the defendant. On the contrary, he said he had his own "suspicions" but they would not be sufficient to satisfy the "evidentiary requirements" facing him.[5] It is not clear what "evidentiary requirements" concerned counsel. He may have meant the rule barring extrinsic evidence to contradict a witness on a collateral matter, but unlike other types of impeachment, bias is not collateral and may be proved by extrinsic evidence.[6] Thus, denials by Detective Stewart and the defendant's wife could have been contradicted by testimony from the defendant's mother and the two unidentified spectators, who said they recognized Stewart as the man they had seen "escorting" the defendant's wife and that she had admitted the relationship to them (Tr. 320), thereby rais-

---

4. *See United States v. Bethea*, 143 U.S.App. D.C. 68, 71, 442 F.2d 790, 793 (1971); Gov't brief at 14.

It is also noteworthy that counsel deemed this testimony of sufficient importance that it was the subject of an unsuccessful motion to suppress, and of extensive cross-examination raising the fact that Stewart had no written

memorandum of the alleged confession. *See* Tr. 118–20.

5. *See* Tr. 321–22, quoted pp. 356–357 *supra*.

6. McCormick, *Evidence* (Cleary rev., 1972) § 40 at 81; *Austin v. United States*, 135 U.S. App.D.C. 240, 418 F.2d 456, 459 (1969); *Villaroman v. United States*, 87 U.S.App.D.C. 240, 184 F.2d 261, 262 (1950).

ing a question of credibility for the jury. We should not speculate, however, about what counsel had in mind.[7] Even if he had concluded that defendant's mother was patently lying, the basis for that judgment beyond his telephone call to the wife, is highly material; also whether counsel interviewed Detective Stewart and the unidentified spectators, and if so, what they said, or whether he attempted to find other witnesses who might be able to substantiate the allegations.

■ Finally the inquiry on remand may examine counsel's failure to consult his client in order to spare him a painful revelation during the emotional stress of trial. "Counsel should discuss fully potential strategies and tactical choices with his client,"[8] unless it is infeasible or the decision involves legal issues too complex for a layman to comprehend.

■ We therefore remand the record for supplementation; however, the district court is not bound to limit the inquiry on remand to the matters discussed herein.

ROBB, Circuit Judge (dissenting):

I would not remand, but would affirm the conviction and judgment.

I think defendant's counsel made a wise tactical judgment when he did not attempt before the jury to explore the relationship between Mrs. Moore and Officer Stewart. In light of Mrs. Moore's denial the jury might well have considered such an attempt as an unjustified attack by Moore on the character of his wife, with resulting prejudice to Moore. Moreover, I do not understand how, as the opinion suggests, "denials by Detective Stewart and the defendant's wife could have been contradicted by testimony from the defendant's mother and the two unidentified spectators". Since it is highly unlikely that the mother and the spectators were eyewitnesses to the affair their testimony at most would have been hearsay. Finally, I note that the point on which the opinion rests—the alleged Detective Stewart, Mrs. Moore relationship—was not raised in the appellant's brief on appeal. I agree with the conclusion implicit in the brief, that the point now raised was not worth arguing. There can be no suggestion that the able appellate counsel is ineffective.

7. Judge Robb argues in dissent that it would have been a "wise tactical judgment" for defense counsel not to explore the alleged relationship in front of the jury for fear that the jury might hold it against the defendant that he had attacked his wife's character.

With all due respect for Judge Robb's experienced sense of trial tactics, there is nothing in the record to suggest trial counsel made a conscious, informed decision on that basis. That is an issue which may be developed at the hearing on remand.

This court has long emphasized that the surmises of appellate judges as to the possible basis of counsel's decisions cannot take the place of proof. See United States v. DeCoster, 487 F.2d at 1204; United States v. Douglas, 160 U.S.App.D.C. 7, 488 F.2d 1331, 1332 (1973); United States v. Brown, 155 U.S.App. D.C. 177, 476 F.2d 933, 935 (1973); Heard v. United States, 129 U.S.App.D.C. 100, 390 F.2d 866, 868 (1968).

8. United States v. DeCoster, supra, 487 F.2d at 1203. See also, ABA Standards for the Defense Function, § 5.2(b) (tactical decisions are the province of the lawyer after consultation with his client).