UNITED STATES of America ex rel. Efrain SANTIAGO, Petitioner,

v.

Leon VINCENT, Superintendent of Green Haven Correctional Facility, Respondent.

No. 75 Civ. 3225.

United States District Court, S. D. New York.

Nov. 30, 1976.

William E. Hellerstein, William J. Gallagher, New York City, for petitioner; Barry T. Bassis, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen., New York City, of counsel.

GAGLIARDI, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted after a jury trial in New York Supreme Court, Bronx County of common law murder and possession of a weapon. On April 5, 1973, petitioner was sentenced to an indeterminate term of imprisonment of 18 years to life on the murder charge to run concurrently with a one year sentence for the weapon possession charge. The Appellate Division, First Department, affirmed the murder conviction and the sentence therefor, but reversed the conviction for possession of a weapon and vacated the sentence on that charge. Appellate Division Order, April 3, 1975. Leave to appeal was denied by a judge of the Court of Appeals (May 19, 1975). The petitioner is now serving his sentence at the Green Haven Correctional Facility.

The sole issue in this petition is whether the trial court's refusal to allow cross-examination of a prosecution witness on the subject of her interest in the case deprived petitioner of his right of confrontation guaranteed by the Sixth and Fourteenth Amendments and thus requires the reversal of his conviction. This issue was fully briefed and argued before the Appellate Division and in the petition for leave to appeal to the Court of Appeals. Petitioner has exhausted his available state remedies. See Picard v. Connor, 404 U.S. 270, 275, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); Chesney v. Robinson, 403 F.Supp. 306, 308 (D.Conn.1975), aff'd on opinion below, 538 F.2d 308 (2d Cir. 1976).

After thoroughly reviewing the record in this case, for the reasons stated herein, this court finds petitioner's confrontation rights guaranteed by the Sixth and Fourteenth Amendments were violated when cross-examination was limited and, accordingly, grants the writ.

On December 17, 1971 at 12:15 A.M. a New York City Police patrolman, in response to waves from a crowd and to a police radio communication, entered a building at 827 Melrose Avenue, Bronx County, New York. This building is the residence of the three key witnesses in this case. Between the first and second floor landing of the building the patrolman saw the victim of the crime in this case, Manuel Perez, Jr., sitting in a slumped position. From the stairway the victim was removed to Morrisania Hospital. According to the testimony of the Medical Examiner of the City of New York, the victim had died shortly after he had sustained multiple stab wounds.

At the trial the prosecution relied heavily upon the testimony of three witnesses. The first of these witnesses, Isabel Alvarez, the only eyewitness to the murder, looked out of the peephole in the door of her apartment and saw the knife penetrate the victim. Myrna Crespo, who testified after Isabel Alvarez, stated that she responded to the cries of Isabel Alvarez, came out into the hallway of her fourth floor apartment and saw the perpetrator and the victim on the landing below. She stated that the perpetrator had a knife and was going through the pockets of the victim, and that she saw the perpetrator's face for a short period of time. The next witness, Myrna's sister Mildred Crespo, an occupant of the same fourth floor apartment, testified that she went out of the apartment as her sister was returning and also saw the perpetrator and the victim on the landing below. She too stated that the perpetrator had a knife and was going through the victim's pockets. She also testified that she saw the perpetrator's face for a few seconds. The only other witnesses at the trial were the policeman who found the body and the father of the victim who both testified before Isabel Alvarez and the medical examiner and the police detective in charge of the investigation of the murder who testified after Mildred Crespo.

It was at the end of the cross-examination of Mildred Crespo that the petitioner alleges the Sixth and Fourteenth Amendment confrontation violation took place. Petitioner claims that the cutting-off of cross-examination denied him the opportunity to establish that Mildred Crespo's knowledge of her brother's arrest for the very crime for which the petitioner was on trial gave her a motive to falsify her testimony. The sustaining of the prosecutor's objections in the following exchange, [T. 730–32][1] petitioner alleges, was a constitutional violation requiring reversal of petitioner's conviction:

THE COURT: Anything further?

Q. You have a brother by the name of Peewee?

A. [Mildred Crespo] Yes.

Q. And did you learn between the time of the night of the incident and the time you spoke with Detective Hughes for the first time that Peewee had been arrested for this homicide?

MR. GILLEECE: Oh, I object to this question.

MR. GETZ: I asked her if she learned it. If she didn't learn it, she could say no.

THE COURT: Did you ever hear that?

THE WITNESS: That he was arrested? No.

Q. Did you learn he was taken to the station house about this incident?

MR. GILLEECE: Hold on. I object to this now.

THE COURT: Sustained.

MR. GETZ: That's a term of legal art, Judge.

THE COURT: Not [sic] it's sustained.

MR. GETZ: If the court pleases, it's a term of legal art.

THE COURT: Now, sir, I don't know where you learned English, but I learned it here in the United States, and it requires me to say certain things and you to understand them. I have said to you five times today if I have said it once, I

---

1. [T.] refers to the page in the transcript of the criminal proceeding against Efrain Santiago. Pages 1–58 refer to the *Huntley* hearing, pages 59–359 refer to the *Wade* hearing and pages 360–929a refer to the trial.

don't want argument after I have made a ruling.

MR. GETZ: Well, Judge—

THE COURT: Is that clear enough?

MR. GETZ: Yes, sir.

THE COURT: Now, don't reply to it. Put your next question.

MR. GETZ: Judge, if the other witness—

THE COURT: Just put your next question.

MR. GETZ: Obviously, if the other witness had a problem with English, this witness has a problem with English.

THE COURT: Would you be seated now.

THE COURT: Don't you hear what I say to you or are you so anxious to talk?

MR. GETZ: I hear you, sir.

THE COURT: You heard me say to you to put the next question. Do you have another question to put, Counselor?

MR. GETZ: Yes.

BY MR. GETZ:

Q. Did your brother ever tell you that he had been taken to the station house to be questioned with reference to this homicide?

MR. GILLEECE: Objection.

THE COURT: Sustained.

MR. GETZ: No further questions.

MR. GILLEECE: I have no further questions.

THE COURT: Step down.

■ Federal court review of state criminal proceedings under 28 U.S.C. § 2254 is limited to errors of constitutional magnitude. *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45, 50 (2d Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975). Furthermore, in order to grant petitioner's habeas corpus petition and reverse his conviction, this court must find that the cutting-off of cross-examination, even if of constitutional dimension, was not harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Duhart,* 511 F.2d 7,

10 (6th Cir.), *cert. denied,* 421 U.S. 1006, 95 S.Ct. 2409, 44 L.Ed.2d 675 (1975).

■ It is well established that the scope and extent of cross-examination is within the sound discretion of the trial court. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). However, it is equally well established that the right of cross-examination is a fundamental one grounded in the Sixth Amendment right of an accused to confront the witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 294–95, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Pointer v. Texas, supra.* This fundamental right is made obligatory on the states by the due process guarantees of the Fourteenth Amendment. *Pointer v. Texas, supra,* 380 U.S. at 403, 85 S.Ct. 1065.

■ When a government witness in a criminal case is being questioned as to his possible motives for testifying falsely, wide latitude should be allowed in cross-examination. *United States v. Masino,* 275 F.2d 129, 132 (2d Cir. 1960). Indeed, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska, supra,* 415 U.S. at 316, 94 S.Ct. at 1110; *United States v. Harris,* 501 F.2d 1, 8 (9th Cir. 1974). Cross-examination is proper when its purpose is to reveal bias or interest on the part of the witness being examined. *See Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *United States v. Lester,* 248 F.2d 329, 334–35 (2d Cir. 1957). Thus, while the trial judge has wide latitude in the control of cross-examination, " 'this principle cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.' " *United States v. Harris, supra* at 8, quoting *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

■ A careful review of the over 900 page record in this case establishes that petitioner was denied his Sixth and Four-

teenth Amendment rights to adequate cross-examination at his trial. In the cross-examination at issue, Mildred Crespo did answer, over the prosecutor's objection, that she did not know her brother had been arrested [T. 730]. However, this single denial was not enough to allow the court to deny further cross-examination intended to discredit the testimony of a prosecution witness. Throughout the trial the court recognized that all three key witnesses, questioned and testifying through an interpreter, had trouble understanding and answering questions [T. 189, 239, 535, 604]. Additionally, even the prosecutor, at an earlier point in the proceeding, recognized that the term "arrest" is a legal term subject to misunderstanding.[2] The trial court had to allow further inquiry on the critical subject of Mildred Crespo's bias stemming from her knowledge of her brother's arrest unless that line of questioning had no reasonable basis in fact. *See United States v. James,* 510 F.2d 546, 551 (5th Cir. 1975), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1976); *United States v. Rich,* 262 F.2d 415, 418 (2d Cir. 1959); *United States v. Bender,* 218 F.2d 869, 874 (7th Cir.), *cert. denied,* 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955).

The good faith basis for the questioning of Mildred Crespo came from the cross-examination of Isabel Alvarez at the *Wade* hearing in the case which took place two weeks prior to the trial. The trial judge also presided at the *Wade* hearing:

Q. And after that, or before that, did Benjamin Perez [Isabel Alvarez's common-law husband] tell you that he had been brought to the 42nd Precinct with reference to questioning on this particular homicide?

THE INTERPRETER: Can you simplify that?

MR. GETZ: All right.

Q. Before he told you the man's name was Frankie, or after he told you the name was Frankie,—

MR. GETZ: Let me finish the question. I haven't finished the question.

THE INTERPRETER: I know. I'm waiting.

Q. Either before or after, did Benjamin Perez tell you that he had been taken to the 42nd Precinct with reference to questioning on this particular homicide?

A. [Isabel Alvarez] I don't know, I know that after he was arrested, they came to look for me. It was after two o'clock in the morning.

Q. After your husband was arrested?

A. After they arrested my husband's friend.

THE COURT: Who is your husband's friend?

THE WITNESS: Pete Crespo, Gustav Crespo [Peewee]. He is brother to the other witness who will appear here.

Q. He is the brother to the other witness. And did Benjamin Perez tell you that he was also taken to the station house with reference to this particular homicide?

A. They were going to take him to the station house but then they took this Crespo.

Q. So far as you know your husband was never taken to the station house?

A. No. [T. 180–81]

While defense counsel never approached the bench to assert this good faith basis by means of a formal offer of proof during the trial, the testimony of Isabel Alvarez at the *Wade* hearing, *supra;* the proximity in time of the *Wade* hearing to the trial; and the fact that the same judge presided at both constituted sufficient notice to the trial judge of the circumstances underlying defense counsel's proffered questioning of Mildred Crespo at the trial. This combination of circumstances provided an effective offer of proof. Additionally, while the record does not evidence a clear intent by defense counsel to make an offer of proof at trial, the abrupt manner in which the

**2.** MR. GILLEECE [Prosecutor]: Objecting at this point, because counsel has been objecting to conclusions—arrest is a conclusion. It has a

constitutional meaning, it has a statutory meaning and it has a civilian meaning. [T. 41–42]

trial court cut-off any attempted explanation by counsel at the trial precluded the possibility of a formal offer of proof to establish a good faith basis for the questioning. *See United States v. James, supra.* The fact that other witnesses were not questioned as to their knowledge of Pete Crespo's arrest[3] does not eliminate the constitutional violation of cutting-off of cross-examination of Mildred Crespo. As a result, the trial judge's actions denied petitioner his Sixth and Fourteenth Amendment constitutional rights. *See Davis v. Alaska, supra.*

■ The restriction placed upon the right to cross-examine Mildred Crespo was not harmless error beyond a reasonable doubt. *See United States v. Harris, supra* at 9. This court is not required to find that the trial would have had a different result had the petitioner been allowed to carry out his cross-examination. *Chesney v. Robinson, supra* at 310. As Chief Justice Burger stated for the Court in *Davis v. Alaska, supra,* 415 U.S. at 317, 94 S.Ct. at 1111:

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided "*a crucial link in the proof . . . of petitioner's act.*" *Douglas v. Alabama,* 380 U.S.,

[415] at 419, 85 S.Ct. [1074] at 1077 [13 L.Ed.2d 934]. (emphasis added).

There can be no doubt that the testimony of Mildred Crespo was "a crucial link" in the conviction of Efrain Santiago and that presentation to the jury of her knowledge of her brother's arrest for the offense for which Santiago was being tried could have seriously undercut her credibility as a government witness.[4] While Mildred Crespo was not an eyewitness to the actual stabbing, the court specifically provided a supplemental circumstantial evidence charge so that in the event the jury did not find Isabel Alvarez's testimony credible it could still convict Efrain Santiago for murder [T. 915–22]. The prosecutor's summation is an indication of how important Mildred Crespo's testimony was for the State. Conceding to the jury that Isabel Alvarez was uneducated, inarticulate and may have been a drug dealer [T. 852],[5] and that Myrna Crespo had identified photographs of two different suspects as the assailant she saw on the night of the crime [T. 838], the prosecutor relied on Mildred Crespo "who counsel [for the defense] could not even touch, no way to impeach her, no way at all." [T. 852]. Mildred Crespo was the only witness who allegedly saw Santiago both before and after the killing [T. 850]. The prosecutor specifically emphasized in summation, "You saw Mildred Crespo here. Did she have a reason to lie?" [T. 847].

Mildred Crespo's knowledge of the arrest of her brother could certainly have been a reason for her to lie.[6] Mildred Crespo and her sister did not tell the police detective in

---

**3.** Because of the decision herein, the court need not decide whether the failure of the defense attorney to question other prosecution witnesses on their bias with respect to this issue constituted a denial of the effective assistance of counsel. *See United States v. Moore,* 174 U.S. App.D.C. 113, 529 F.2d 355 (1976). For example, the fact that Isabel Alvarez thought her common-law husband was going to be arrested but they arrested his friend Pete Crespo instead [T. 180–81] gave her a possible motive to falsify her testimony. However, a failure to explore this motive at trial does not affect the unconstitutionality of the denial of cross-examination of Mildred Crespo on the issue of her bias in testifying.

**4.** This does not even take into account how the testimony may have inferentially affected the jury's judgment on the credibility of Myrna Crespo. Myrna Crespo had the same interest as Mildred in exculpating her brother.

**5.** In addition it was established earlier in the trial that Isabel Alvarez had once stabbed a man allegedly in self-defense [T. 569].

**6.** Whether Pete Crespo was in fact arrested is irrelevant. It is the subjective knowledge of Mildred Crespo that is relevant in determining bias or prejudice.

charge of the investigation who came to their apartment in the early morning, a few hours after the murder, to interview Isabel Alvarez that they too had seen the assailant. [T. 209, 267, 656, 728].[7] Only that afternoon, twelve hours later, did they give their stories to the detective [T. 659, 236]. In the interim, according to the testimony of Isabel Alvarez at the *Wade* hearing, Pete Crespo had been taken to the station house with reference to his particular homicide [T. 181].

On these facts, defense counsel should have been permitted to expose to the jury, as the sole triers of fact and credibility, whatever knowledge Mildred Crespo in fact had about her brother's arrest so the jury could appropriately draw inferences relating to the reliability of the witness. *Davis v. Alaska, supra* at 318, 94 S.Ct. 1105. On the basis of the trial court's abrupt cutting-off of cross-examination, "the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness."[8] *Id.*

It is the conclusion of this court that petitioner, in his trial, was denied the right to an effective cross-examination which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 [1966]." *Smith v. Illinois, supra,* 390 U.S. at 131, 88 S.Ct. at 750, quoted in *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. 1105; *see Chesney v. Robinson, supra* at 311. As a result, petitioner's conviction cannot stand. Petitioner is therefore presently in custody in violation

of the Constitution of the United States. 28 U.S.C. § 2254.

█ It is ordered that a writ of habeas corpus should issue out of this court discharging the petitioner, Efrain Santiago, from custody unless the State of New York vacates the judgment of conviction and accords him a new trial within 60 days of the issuance of the mandate herein.[9]

---

7. The investigating detective testified at the *Wade* hearing that he had spoken to the Crespo sisters in the early morning immediately after the murder [T. 95]. However, his testimony at the trial was much less clear and he had no notes to identify that meeting. [T. 759, 765]. On the other hand, the Crespo sisters were both very clear and consistent that they did not speak to the detective until the next afternoon.

8. The prosecution's presentation of Mildred Crespo as a "blameless witness" was reinforced by the trial court's charge to the jury, "As a matter of law here there are no witnesses

who can be said as a matter of law to be interest [sic] witnesses." [T. 860]

9. The court trying the case may extend the period for a total not to exceed 180 days from the date on which the order occasioning the retrial becomes final, where unavailability of witnesses or other factors resulting from passage of time shall make trial within 60 days impractical. *United States ex rel. Washington v. Vincent,* 525 F.2d 262, 268 n. 10 (2d Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).