UNITED STATES of America

v.

John MOORE, Jr., Appellant.

No. 75–1484.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 6, 1976.

Before BAZELON, Chief Judge, and ROBINSON * and ROBB, Circuit Judges.

Opinion for the Court filed by BAZELON, Chief Judge.

Opinion filed by ROBB, Circuit Judge, concurring in part and dissenting in part.

* Judge Robinson replaced Judge Hastie, deceased, after remand.

1. 21 U.S.C. § 841(a)(1) (1970).

2. Supplemental Memorandum of Appellee.

3. Noting that the record, like that in *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201 (1973) (*DeCoster I*), *opinion after remand,* No. 72–1283 (D.C.Cir., October 19, 1976) (*DeCoster II*), "poses more questions about counsel's preparation and investigation than it answers[,]" we pointed out that it did not indicate "why counsel decided not to

BAZELON, Chief Judge.

Appellant was convicted of possession of a controlled substance with intent to distribute.[1] On appeal, he claims that the search which uncovered the narcotics was illegal, that the evidence of possession was insufficient, and that his attorney's failure to file a pretrial motion to suppress the physical evidence denied him the effective assistance of counsel.

Although not raised by the parties, the sentencing transcript revealed allegations of a sexual relationship between an important government witness and appellant's wife. Accordingly, the parties were asked to submit supplemental briefs addressing, *inter alia,* "the bearing, if any, these allegations may have on the issues of ineffectiveness of counsel and the sufficiency of the evidence of possession." In response, the government conceded that the allegations "raise questions which . . . can be satisfactorily resolved only by further proceedings in the trial court."[2] In a previously reported opinion, we elucidated the matters to be considered on remand for the guidance of the district court.[3]

Pursuant to our directive and the new trial motion filed by appellant, a hearing was held by the trial court on April 21, 1976, at the conclusion of which the court found that trial counsel was neither ineffective in connection with the allegations of Mrs. Moore's illicit affair, nor in failing to file a motion to suppress.[4] Accordingly, appellant's motion for a new trial was denied.

use the available testimony to impeach Detective Stewart [the government witness]; what investigation of these charges he had made; or what circumstances caused him to decide not to consult his client concerning this tactical decision." *United States v. Moore,* 174 U.S. App.D.C. 113, 115, 529 F.2d 355, 357 (1976).

4. The district court's findings of fact and conclusions of law appear on pages 234–246 of the transcript of the remand proceedings (hereinafter Remand Tr.).

The record has been returned to us, and we find no reason to disturb the district court's judgment. Because we also find the other contentions advanced by appellant on appeal to be without merit, we affirm the conviction.

## I

Appellant argues that the narcotics were seized illegally and should have been suppressed. The pertinent facts may be summarized briefly. Appellant was arrested on August 8, 1974, for driving without a permit by a police officer who, only two days before,[5] had stopped appellant to find that he had no valid driver's permit.[6] The officer testified that as he and his partner approached appellant's car, appellant "bent over in a manner going down towards the right hand leg and I suspected about a weapon [sic]."[7] Consequently, after ordering appellant out of the car and placing him under arrest, the officer immediately inspected the area where appellant had been reaching and found a bag containing a substantial amount of heroin.

The government argues that such a search incident to a lawful arrest of an area within the suspect's control from which he might obtain a weapon is controlled by *United States v. Green.*[8] Finding the facts here even more persuasive than those in

*Green,* we conclude that the narcotics were lawfully seized.[9]

■ Given the fact that the arresting officer had stopped appellant just two days before, at which time appellant had no valid driver's permit, there can be no dispute that there was probable cause to detain appellant, and to arrest him when he failed to present a valid permit. As in *Green,* the officer testified that he saw the defendant bend over as if to place something under the seat. This testimony was specifically accepted as credible by the district court which found that as a result of the officer's observations, he "feared, and had reason to fear, that there might be a weapon" under the seat.[10] Appellant's argument that there was no reasonable basis for the officer's fear seems especially disingenuous in light of his arrest by the same officer, only two days before, for carrying a dangerous weapon.[11]

■ Appellant makes much of the fact that the search was conducted only after he was told to get out of the car. In *Green,* the defendant was also outside when the officers conducted a limited protective search of his vehicle. Moreover, the officers here allowed appellant's companion to get back into the car and drive away, making an inspection of the driver's seat area

---

**5.** Tr. 11. The August 6, 1974 arrest was for carrying a dangerous weapon. This fact was brought out during a pretrial hearing on appellant's motion to suppress certain statements, and was not before the jury.

**6.** Tr. 11–12. Additionally, the officer had learned through a radio check that appellant's permit had been suspended in 1971. Tr. 18.

**7.** Tr. 12, 72, 81–83.

**8.** 151 U.S.App.D.C. 35, 465 F.2d 620 (1972).

**9.** Our conclusions that the search was legal, and that trial counsel was not ineffective in failing to raise the issue in the lower court, *infra* pp. ——–—— of 180 U.S.App.D.C., pp. 1088–1090 of 554 F.2d, make it unnecessary to reach the issue of plain error in the admission of evidence seized in violation of the Fourth Amendment. Rule 52(b), Fed.R.Crim.P. *See, e. g., United States v. Gulledge,* 469 F.2d 713 (5th Cir. 1972); *United States v. White,* 139 U.S.App.D.C. 32, 429 F.2d 711 (1970); *United*

States v. Wenner, 417 F.2d 979 (8th Cir.), *cert. denied,* 396 U.S. 1047, 90 S.Ct. 700, 24 L.Ed.2d 692 (1970); *United States v. Sten,* 342 F.2d 491 (2d Cir.), *cert. denied,* 382 U.S. 854, 86 S.Ct. 103, 15 L.Ed.2d 91, *reh. denied,* 382 U.S. 949, 86 S.Ct. 402, 15 L.Ed.2d 357 (1965); *Dickey v. United States,* 332 U.S. 773 (9th Cir.), *cert. denied,* 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964); *Whiting v. United States,* 321 F.2d 72 (1st Cir.), *cert. denied,* 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963).

**10.** Tr. 59–60. We do not mean to imply that an officer must subjectively experience "the emotional state of fear" before a protective search for weapons can be justified. *See United States v. Robinson,* 153 U.S.App.D.C. 114, 471 F.2d 1082, 1109 (1972) (en banc) (Bazelon, C. J., concurring), *rev'd on other grounds,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

**11.** *Supra,* n. 10.

# 1089

for a concealed weapon all the more reasonable.[12]

## II

In *United States v. DeCoster (DeCoster I)*,[13] we held that "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate."[14]  *DeCoster I* contemplates a three step inquiry to determine whether a violation of one of the duties specified therein warrants reversing a conviction for ineffective assistance: "did counsel violate one of the articulated duties; was the violation 'substantial'; and was the substantial violation 'prejudicial.' "[15]  The inquiry here leads us to conclude that appellant's conviction should not be reversed.

■ (a) We held in *DeCoster I*[16] that a defendant is denied the effective assistance of counsel "when counsel's choices are uninformed because of inadequate preparation[.]"[17]  But this court does not sit to "second guess strategic and tactical choices"[18] which are clearly the product of an informed judgment based on adequate preparation and investigation unless they are manifestly unreasonable.[19]  The record of the remand proceedings demonstrates that counsel made an informed decision not to file a pretrial motion to suppress the

drugs, a judgment which we cannot say was outside "the range of competence demanded by attorneys in criminal cases."[20]

After reviewing the facts with respect to appellant's arrest and the subsequent search, trial counsel explained that in his estimation "the motion would have been frivolous, by virtue of the officer's ability to apprise the Court that having stopped this man only 48 hours [before], that he had found a loaded weapon in the automobile, and that this gesture on his part was sufficient to establish a reasonable apprehension of danger."[21]  Although counsel could not recall the details, he represented that the decision was also motivated by a desire not to put the arresting officer on notice of a certain element of evidence.[22]

Counsel testified that although he felt familiar with the applicable law, search and seizure being one of his "fortes,"[23] he did research the question with respect to this particular case.[24]  He further stated that he had consulted with his client, explaining fully his view.  Counsel reported that appellant "listened to what I had to say, . . . gave me his viewpoints and finally we reached a mutual agreement that there would be no sense in filing the motion."[25]

In his original brief on appeal, appellant also argued that counsel was ineffective in failing to move for a judgment of acquittal at the close of the prosecution's case.  The record, however, reveals that counsel did make such a motion. Tr. 127.

12. We have also considered, and find to be without merit, the contention that the government failed to sustain its burden of proving appellant's possession of the narcotics beyond a reasonable doubt.

13. *DeCoster I, supra,* n. 3.

14. *Id.* at 1202.

15. *DeCoster II, supra,* n. 3 at 11.

16. *Supra,* n. 3 at 1201.

17. *Id.*

18. *Id.*

19. *See DeCoster II, supra,* n. 3, at 15, and cases cited therein, n. 25.

20. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  This is especially so in view of our disposition of the search issue.  *Supra,* pp. —————— of 180 U.S.App.D.C., pp. 1087–1089 of 554 F.2d.

21. Remand Tr. 105–106.  *See also* Remand Tr. 109–110.

22. Remand Tr. 106–107.  Apparently, the evidence related somehow to appellant's driver's license, and counsel's concern was predicated on something the officer had said at appellant's parole revocation hearing.  *Id.*

23. Remand Tr. 109.

24. Remand Tr. 147.

25. Remand Tr. 111.  Counsel stated that had appellant, after their conversation, "still been insistent upon having the motion filed  .  ., then, of course, it would have been handled in a different manner."  Remand Tr. 112.

In a separate case involving appellant, counsel had filed a motion to suppress a weapon, and in the instant case, a motion to suppress certain of appellant's statements. This is but further support for the district court's conclusion, with which we agree, that trial counsel made a conscientious and deliberate "decision here that under the circumstances and the case law, and the factual situation that existed, that this was not a case in which to file a motion to suppress the tangible evidence."[26]

(b) Counsel's actions in connection with Mrs. Moore's alleged involvement with Detective Stewart were explored in great detail at the hearing on remand. Although Stewart testified on the first day of trial, no one mentioned anything then about this alleged liaison. It was only after Detective Stewart had been called for rebuttal testimony, on the last day of the trial, that appellant's family came forth, claiming that they recognized Stewart as Mrs. Moore's paramour.[27] The information concerning this alleged relationship was relayed to trial counsel by appellant's mother and his two uncles, Forrest and Edwin Kelly.

The testimony given at the remand hearing by appellant's mother was contradictory in many respects, especially with respect to whether she ever saw Detective Stewart and appellant's wife together. Forrest Kelly reported that he only had a fleeting glance of the two together. Although Edwin Kelly testified that he had spent "a lot of time" with Stewart, the district court observed that Kelly "couldn't remember

much" by way of details, and thus "discredited" his testimony.[28] These findings are fully supported by the record.

Trial counsel explained that immediately upon receiving this information, he telephoned Mrs. Moore:[29]

And so I thought that I would go and speak with her. That perhaps I could encourage her, if it was true, to come and relate that information. And then when I spoke with her I explained to her the necessity for the information, how important it was, what stage of the trial we were in, what it was we would need the testimony to impeach, what Officer Stewart had maintained to be the fact, what we thought it would destroy.

Therefore, if it was true, I urged her to come forth and tell it. She at that time related to me that it was not true, it was out of the question that she had had any relationship with Officer Stewart. She had not gone around with him.

She advised me, also, that [appellant's family] . . . had attempted to get her to perjure herself. They had told her they wanted her to say that.

And she said if she was called down to testify that is what she would represent.[30]

Counsel reported that in view of this response, he thought it would have been "the kiss of death" to put Mrs. Moore on the stand.[31] He further recollected considering it unwise to put Mrs. Moore in a position where he would have to attack her credibility in front of the jury.[32]

---

Appellant himself testified that after consultation he agreed with trial counsel not to move to suppress. Remand Tr. 185.

**26.** Remand Tr. 245.

**27.** Appellant's mother and both uncles so testified. Trial counsel also reported that it was only at this time that the family made its claim.

**28.** Remand Tr. 237–238.

**29.** Counsel's recollection was that "he was not completely satisfied with the sufficiency of [the] representations in terms of its constituting impeachable evidence," [sic] and that he concluded that "the one person who can obviously resolve this matter would be Mrs. Moore herself." Remand Tr. 125. Counsel further

testified that "throughout the pendency of [the] investigation pretrial [he had] established . . . a rather good rapport with Mrs. Moore." *Id.*

**30.** Remand Tr. 125–26.

Appellant's family also called Mrs. Moore, receiving from her the same response. Mrs. Moore's testimony at the remand hearing also corroborated counsel's.

**31.** Remand Tr. 152.

**32.** Counsel recalled: "I felt, in view of the fact that here was a woman with regard to whom nothing had been established to show any hostility on her part towards her husband and whom we subsequently attacked in that fashion that would suggest to this jury that we

Counsel also explained that he believed that any effort to prove the alleged romance in court would be hampered by "evidentiary requirements." [33] . He stated that he was referring to "the rule which would make me bound by my witness' testimony, as well as the rule barring the use of extrinsic evidence to impeach a witness on a collateral matter." [34]

It was under these circumstances that trial counsel decided against exploring the allegations during the trial. Counsel's testimony, expressly found credible by the district court, establishes that the decision was a tactical one. We agree with the district court that counsel's judgment was reasonable,[35] and did not deny appellant effective assistance.

More troubling is counsel's admitted failure to consult appellant concerning this tactical decision. Consultation is among the specific duties owed by counsel to a client articulated in *DeCoster I*: "[c]ounsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client." [36]

Counsel's explanation for failing to apprise appellant of the allegations was that he did not "deem [using the charges to impeach Detective Stewart] a feasible method of advocacy," so that the only remaining reason to tell appellant would be for appellant's "personal information." [37] Counsel reported that he understood that appellant "had considerable difficulty with at least two prior lawyers[,]" and "was aware that [appellant] might be prone to

---

were desperately trying to obtain acquittal at any cost and that the matter would backfire entirely upon us and ruin whatever little chances we had for an acquittal." Remand Tr. 153–154.

**33.** *See United States v. Moore, supra,* n. 3 at 357.

**34.** Remand Tr. 161. *See also* Remand Tr. 152–153.

As previously noted, "unlike other types of impeachment, bias is not collateral and may be proved by extrinsic evidence." *United States v. Moore, supra,* n. 3 at 357, citing McCormick, Evidence § 40 (Cleary rev., 1972); *Austin v. United States,* 135 U.S.App.D.C. 240, 418 F.2d 456, 459 (1969); *Villaroman v. United States,* 87 U.S.App.D.C. 240, 184 F.2d 261, 262 (1950). Trial counsel conceded that this is in fact the case. Remand Tr. 162.

Appellant's trial predated the applicability of the new Federal Rules of Evidence, which expressly permit impeachment of one's own witness. Rule 607, Fed.R.Evid. Even before the effective date of the new Rules, however, the traditional principle that a party who calls a witness vouches for his credibility had been substantially eroded, and in some circuits abandoned entirely. *See* 3 Weinstein's Evidence § 607 [01] (1975); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Allen,* 522 F.2d 1229 (6th Cir. 1975); *United States v. Bryant,* 461 F.2d 912 (6th Cir. 1972); *United States v. Lineberger,* 444 F.2d 122 (4th Cir.), *cert. denied,* 404 U.S. 1060, 92 S.Ct. 746, 30 L.Ed.2d 748 (1972); *United States v. Freeman,* 302 F.2d 347 (2d Cir.), *cert. denied,* 375 U.S. 958, 84 S.Ct. 448, 11

L.Ed.2d 316 (1963); *Johnson v. Baltimore & Ohio Railway Co.,* 208 F.2d 633 (3d Cir.), *cert. denied,* 347 U.S. 943, 74 S.Ct. 639, 98 L.Ed. 1091 (1954). *Cf. United States v. Scarbrough,* 470 F.2d 166 (9th Cir. 1972).

In this Circuit, the traditional rule had not been abrogated, although the trial judge was accorded discretion as to whether to allow such impeachment. *See Worthy v. United States,* 122 U.S.App.D.C. 242, 352 F.2d 718 (1965), *vacated on other grounds,* 384 U.S. 894, 86 S.Ct. 1961, 16 L.Ed.2d 1000 (1966), *appeal after remand,* 127 U.S.App.D.C. 329, 383 F.2d 524 (1967). *But see Bartley v. United States,* 115 U.S.App.D.C. 316, 319 F.2d 717 (1963). Furthermore, the limitation can be avoided by having the court call the witness. 3A Wigmore, Evidence § 918 (Chadbourn rev. 1970).

**35.** Counsel's judgment was based on the totality of the circumstances, which, taken together, support the reasonableness of his chosen course of action. One factor was counsel's assessment of the impediments created by the "evidentiary requirements." *Supra,* p. —— of 180 U.S.App.D.C., p. 1091 of 554 F.2d. While counsel's concern with these requirements was at least partially misguided, *supra,* n. 34, we would not characterize as manifestly unreasonable action premised upon such considerations.

**36.** *DeCoster I, supra,* n. 3 at 1203. *See also* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Defense Function, § 5.2(b) (App.Draft 1971).

**37.** Remand Tr. 136.

certain outbursts."[38] Perceiving "nothing to be gained by advising [appellant] . . . during the pressure of awaiting a verdict from his jury that there might be some possibility that his wife was running around with someone[,]" counsel elected to request that appellant's family discuss the matter with him afterwards.[39]

We have no reason to doubt that counsel's solicitude for appellant was sincere; nevertheless, good intentions alone may not justify the failure to consult. Counsel reasoned that he need not confer with appellant also because he deemed impeachment infeasible. Counsel may decide not to probe a witness' alleged bias where there is an opportunity to do so, but when conditions permit, he should confer with his client first.[40] Even though counsel's expertise and judgment will usually be superior to his client's, the client may be uniquely positioned to contribute to tactical decisions. Here, for example, because counsel failed to discuss the matter with appellant, he did not know whether appellant could furnish sources of information to substantiate the family's charges.

Even if counsel's failure to consult his client rose to the level of a violation, however, there is no indication that in this case the omission was "substantial," i. e., consequential.[41] "To establish that a violation was substantial, an appellant generally must make a factual showing that his lawyer's errors or omissions in some way impaired the defense."[42] Appellant has made no such showing. His testimony at the remand hearing showed that he knew nothing about his wife's alleged romantic activities at the time of the trial. He did not indicate what he might have told counsel, nor did he suggest how his defense might have been advanced had he been consulted. Absent allegations of adverse consequences, the alleged violation can not be considered "substantial."[43]

Equally troubling is trial counsel's failure to interview Detective Stewart. "Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed."[44] At the hearing on remand counsel testified that he did not contact Stewart

38. *Id.*

39. *Id.*

40. *See* American Bar Association, Standards Relating to the Defense Function, *supra* n.36 § 5.2(b) (emphasis added): "The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer *after consultation with his client."* Commentary to § 5.2(b) recognizes that "[n]umerous strategic and tactical decisions must be made in the course of a criminal trial, many of which will not allow extended, if any consultation." This case presents no occasion for us to define the circumstances such as the heat of trial which might excuse counsel from consultation.

Contrast counsel's failure to consult with appellant concerning these allegations with his action in discussing with appellant the motion to suppress, *supra* p. —— of 180 U.S.App.D.C. p. 1089 of 554 F.2d.

41. See *DeCoster II, supra,* n. 3 at 19–20.

42. *Id.* (footnote omitted).

While in certain circumstances "such a consequence is so likely to have resulted from the acts or omissions by counsel and yet be so difficult to prove that, in accordance with well-established evidentiary principles, it can be presumed[,] *id.,* the failure to consult here does not fit within this category.

43. The district court's refusal to grant a hearing on an ineffective assistance of counsel claim was upheld in *United States v. Pinkney,* 177 U.S.App.D.C. 423, 543 F.2d 908 (1976), because, *inter alia,* the appellant had not alleged adverse consequences resulting from counsel's asserted breach of his duty. As here, the duty involved was consultation—appellant asserted that his attorney had failed to discuss with him the Government's sentencing memorandum filed several days before sentencing, and had failed to dispute the Government's allegations at sentencing. The court noted that "any omission by counsel . . . was inconsequential unless there was evidence upon which counsel could undertake a refutation," and that "appellant's motion gave no indication as to the evidence, if any, by which he would undertake an effort at refutation." *Id.* at 432 of 177 U.S.App.D.C., at 917 of 543 F.2d & n. 60 (footnote omitted).

44. *DeCoster I, supra,* n. 3 at 1204.

because he "expected his reply would be a denial in any event, whether [the allegations] were true or not."[45] But counsel's anticipation of what a potential witness would say does not excuse the failure to find out; speculation cannot substitute for certainty.[46]

 Even if the failure to interview Stewart violated the duty to investigate, however, the asserted violation must be deemed inconsequential in view of the district court's finding, amply supported by the record, that appellant's family was not worthy of belief. By finding the family's story incredible, the court implicitly concluded that had counsel interviewed Stewart, the response elicited would have been a denial, leaving counsel in the same position as he was without having interviewed Stewart. We find no reason to disturb this judgment.[47]

Accordingly, the conviction is

AFFIRMED.[48]

ROBB, Circuit Judge (concurring in part, dissenting in part):

I concur in the result and in Part I of the opinion. I do not accept the implication in Part II that counsel may have violated some duty owed to his client, although that violation was "inconsequential".

Trial counsel should not be required to proceed by the numbers, in precise conformity with a check list of duties articulated in appellate cloisters. A criminal case cannot be tried by rote; in the dust and heat of trial, when quick decisions must be made, counsel must be free to rely upon his intuitive judgment based upon his experience and his estimate of the situation with which he is confronted at the moment. If this were not so, then any lawyer worth his salt would hesitate to accept appointment to defend an indigent charged with crime.

Trial counsel here had been a member of the bar for some sixteen years, had tried hundreds of cases, and as the District Court found "was recognized as one of the finer trial lawyers". He had served in the Public Defenders Office, in the Department of Justice, and as an assistant United States Attorney. He was on the District Court's accredited list for Criminal Justice Act appointments. He made sound and reasonable decisions based upon his experience and common sense. As the District Court found, and the majority concedes, events have proved him right. I would not suggest that he may have been at fault because he did not precisely follow a prescribed drill.

---

45. Remand Tr. 135.

46. The trial court on remand found that counsel "did everything he could and should have done with respect to [the] rumor. . . ." Remand Tr. 242. We find no support in the record for the conclusion, implicit in this finding, that counsel's decision not to interview Stewart was a reasonable and informed tactical judgment, and that therefore the duty to investigate was not breached. There is nothing in counsel's testimony on remand to suggest that this was the case.

47. Detective Stewart, seriously injured by a gunshot, was physically unable to testify at the hearing on remand, or to be deposed. The court expressly found that his testimony was unnecessary. We perceive no basis for upsetting this finding.

Nor do we find reason to disturb the trial court's finding that there were no other potential witnesses counsel could have sought out to substantiate the family's charges. Except for one aspect of the testimony of appellant's mother, discredited by the court, there was no testimony indicating that Stewart and Mrs. Moore were ever together in an area to which counsel might go to seek interviews.

48. Nothing in this opinion is intended as a judgment of the motives or abilities of appellant's lawyer, nor an inquiry into culpability. The concern is simply whether the adversary system has functioned properly. The question is not whether the defendant received the assistance of effective counsel, but whether he received the effective assistance of counsel.